Gloria RYDER, PH.D., Petitioner,

v.

Denise MITCHELL, Respondent,

and

Concerning Juanita Benetin,
Attorney–Respondent.

No. 00SC889.

Supreme Court of Colorado,
EN BANC.

Sept. 16, 2002.

Law Offices of Peter R. Bornstein, Peter R. Bornstein, Denver, Colorado, Attorneys for Petitioner.

Juanita Benetin, P.C., Juanita Benetin, Denver, Colorado, Law Office of Marcia E. Wade, Marcia E. Wade, Boulder, Colorado, Attorneys for Respondent and Attorney–Respondent.

Justice KOURLIS delivered the Opinion of the Court.

In this case, we must determine whether a child therapist owes a duty of care to her patients' mother in a circumstance in which she allegedly misdiagnosed symptoms of parental alienation and reported her findings to the father and to the children's new therapist. The court of appeals found that such a duty exists. *Mitchell v. Ryder*, 20 P.3d 1229, 1233 (Colo.App.2000). We disagree and now conclude that the duty the therapist owes the children themselves is primary and may, under certain circumstances, require disclosure to the parents or other involved parties. Creating a duty to the parents could conflict with or disserve the primary duty. Furthermore, the possibility of liability to the children in the event of breach or malpractice serves as an adequate safeguard against negligent treatment by the therapist. Accordingly, in balancing the factors necessary, we reverse the court of appeals and decline to impose a duty upon Gloria Ryder in favor of Denise Mitchell.

## I.   Facts

The plaintiff, Denise Mitchell,[1] was divorced from her husband, David Mitchell,[2] in 1995. In the divorce proceeding, the trial court awarded custody of the couple's two minor children to the plaintiff. That court denied the plaintiff's request that Mitchell receive only supervised parenting time with the children. Based upon a counselor's testimony, the court found that Mitchell was a fit parent who was entitled to substantial contact with the children. The court provided for a period without overnight parenting time followed by phased-in overnight visitation.

According to the plaintiff, in the summer of 1996, when the children, ages five and three, began overnight visits with their father, the plaintiff began noticing disturbing behavioral and psychological changes in both children. The plaintiff became convinced that Mitchell was abusing the children during his parenting time. In June 1996, she contacted attorney Nancy Simmons, a specialist in high-conflict family law matters, to represent her in pursuit of modification of Mitchell's parenting time rights and child support obligations.

Simmons suggested the prompt involvement of a competent health care professional and recommended the names of at least two potential therapists to examine and treat the five-year-old boy. The plaintiff selected psychologist Dr. Gloria Ryder, the defendant.[3]

At the initial session, the plaintiff signed an express authorization permitting the five-year-old "to receive psychotherapy with Gloria J. Ryder, Ph.D." On the boy's information form, the plaintiff indicated that the reason for the therapy was "D.V. [Domestic Violence]—Out of control behavior." Shortly thereafter the plaintiff signed a similar au-

---

1. Although in this proceeding Denise Mitchell is the respondent, because she was the plaintiff in the trial court, for the sake of clarity, we will refer to her as the plaintiff throughout this opinion.

2. We will refer to David Mitchell as Mitchell throughout this opinion.

3. Although in this proceeding Ryder is the petitioner, because she was the defendant below, we will refer to her as the defendant or Ryder throughout this opinion.

thorization for the three-year-old girl.[4] The plaintiff expressed her concerns to Ryder that Mitchell was abusing the children. Based on her therapy with the children, parental interviews, and investigation of available records, including consultations with third parties, the defendant formed the opinion that Mitchell did not pose a danger to his children.[5] Rather, the defendant determined that the five-year-old's behavior problems stemmed from the boy's feelings that his father had abandoned him. Simmons and Ryder both testified in this case that, when Ryder indicated during the course of a conference call that there was nothing to support an accusation of sexual abuse, the plaintiff became enraged and indicated that she would sue Ryder for not making the necessary findings to "terminat[e] Mr. Mitchell's parenting time with the children."

Subsequently, the plaintiff sought to transfer the children to a new therapist. In response to this decision, on February 26, 1997, the defendant wrote the plaintiff a letter expressing her opinion that it was not in the boy's best interest to transfer to a new therapist. She stated that the boy was in the midst of addressing critical issues regarding the divorce, including his feelings of loss and abandonment. She asserted that the interruption in the psychotherapeutic process was detrimental to the five-year-old's psychological, emotional, cognitive, and social functioning. She further expressed concern that the child might perceive that his therapist was also abandoning him.

The letter next addressed the plaintiff's concerns that Mr. Mitchell was "a threat to the children and that parental visitation should be terminated, or at best, supervised parenting time be put in place." Ryder reconfirmed her prior assurances that Mitchell did not present a danger to the children. She expressed her opinion that there was no reason to terminate or modify the court-ordered parenting time or Mitchell's relationship with the children.

In addition, Ryder discussed the issue of parental alienation, which she asserted she had previously raised with the plaintiff. She stated that the plaintiff had continually made assertions, lacking any factual support, that Mitchell was abusing the children. She wrote that the plaintiff had been adamant that Mitchell's parenting time be terminated and had continually pressured the defendant to file child abuse charges against Mitchell. The defendant opined in the letter that since she would not file the allegations, or recommend modified parenting time, the plaintiff withdrew the child from treatment. She stated:

> Repeatedly, you have been told there are no indicators of child abuse that warrant the actions you want taken. Instead, you have been repeatedly told that there are clear indicators of parental alienation. You have not wanted to address the parental alienation issue, but stay focused on your objectives of terminating Mr. Mitchell's parenting time with his children. It is very important for you to look at your own parental alienation. This will only serve to hurt your children.

The defendant concluded her letter by expressing hope that the plaintiff would reconsider the decision to discontinue therapy.

The defendant sent a copy of the letter to Mitchell and to the children's new therapist. Shortly thereafter, Mitchell filed a motion for a change of custody, seeking to move the custody of the children from the plaintiff to himself. The plaintiff responded with a motion to limit Mitchell's parenting time. The court denied both motions and custody and parenting time remained unchanged.

The plaintiff then initiated this action, in which she sued Ryder and Simmons for breach of fiduciary duty and negligence, seeking damages for having to respond to Mitchell's motion for a change of custody. In its Order dated February 10, 1998 the trial court granted Ryder's motion to dismiss the breach of fiduciary duty claim in which

4. Although the plaintiff asserts that the defendant engaged in "family therapy," the record only contains support for the contention that the defendant was the children's therapist and the trial court so found.

5. The plaintiff also obtained a physical examination of the three-year-old at The Children's Hospital, which did not indicate sexual abuse.

the plaintiff was asserting a breach of a duty owed to the children. The trial court found that only the children were Ryder's patients, and that the record evidenced no support for the plaintiff's allegation that she, too, was a patient. The trial court specifically held that any causes of action arising from an alleged breach of duty owed to the children would have to be brought by the plaintiff on behalf of the children and not on her own behalf.

However, citing *Montoya v. Bebensee*, 761 P.2d 285, 289 (Colo.App.1988), the court held that the defendant did owe a duty of care to the plaintiff in making any public report or recommendation based on an opinion she formed while treating the children. Therefore, the court concluded that a genuine issue of fact remained as to whether the defendant negligently formulated and published the opinions expressed in the letter.

Revisiting the issue in an Order dated February 17, 1999, a different trial judge granted the defendant's Motion for Summary Judgment in its entirety, dismissing the case with prejudice. That court found that, under Colorado law, the defendant owed no duty to the plaintiff which would allow her to bring negligence claims. The court acknowledged the holding in *Montoya*, however, relying on *Card v. Blakeslee*, 937 P.2d 846, 850 (Colo. App.1996), the court held that the letter the defendant sent to the plaintiff, and on which she copied Mitchell, did not constitute the kind of "public report or recommendation" that would trigger the duty announced in *Montoya*. Finally, the court noted that the letter did not accuse the plaintiff of sexually abusing the children or committing any other criminal offense.

Subsequently, after an evidentiary hearing, the trial judge also granted the defendant's Motion for Attorney's Fees. The court concluded that the plaintiff's claims in this case were substantially groundless, frivolous, and vexatious, both legally and factually.

The plaintiff appealed the entry of summary judgment on her negligence claims and both plaintiff and her attorney appealed the trial court's award of costs. The court of appeals reversed the trial court's orders and remanded the case. *Mitchell v. Ryder*, 20 P.3d 1229, 1234 (Colo.App.2000). Noting that the question of whether a defendant owes a plaintiff a duty is a question of law that is reviewed de novo, it concluded that the defendant owed the plaintiff a duty to use due care in formulating and publishing her opinion that the plaintiff's actions resulted in parental alienation. *Id.* at 1231–32. In considering the factors involved in determining whether the law should impose a duty, the court of appeals reasoned: the risk of injury to a custodial parent who is falsely accused of parental alienation is significant and foreseeable; the risk of triggering or affecting custody litigation is immediately apparent; and the burden to exercise due care placed upon the therapist in this context is no greater than the duty that almost all mental health professionals are already required to meet, and thus is not significant. *Id.* at 1232. It further held that publishing a public report or adverse recommendation "includes publishing material to someone who is likely to and does in fact take adverse action against the person who is the subject of the publication." *Id.* at 1233. It also determined that the duty in *Montoya* was not limited to child abuse but encompassed the publication of any opinion likely to cause injury to the person described if the opinion is negligently formulated. *Id.* The court of appeals also reversed the trial court's award of attorney fees and costs. *Id.* at 1234.

The defendant sought and we granted certiorari from the court of appeals' judgment. We now consider the issue of whether the defendant in this case owed a duty of care to the plaintiff.[6]

---

**6.** Specifically, we granted certiorari on the following issues:

1. Whether, under the law of negligence and in the absence of malice, conduct by an actor which encourages another to seek relief from the courts is a legally compensable injury.

2. Whether the court of appeals has extended the law of negligence to establish a duty of care to a non-patient by a psychotherapist under circumstances which depart from existing law.

3. Whether the court of appeals' decision regarding the duty a psychotherapist owes to a non-patient under the law of negligence impermissibly interferes with the law of defamation.

## II. Standard of Review

### A.

Summary judgment is appropriate when the pleadings and supporting documents demonstrate that no genuine issue as to any material fact exists and that the moving party is entitled to summary judgment as a matter of law. *Martini v. Smith,* 42 P.3d 629, 632 (Colo.2002) (citing *Vail/Arrowhead, Inc. v. Dist. Ct.,* 954 P.2d 608, 611 (Colo. 1998)). An appellate court's review of a trial court's order granting or denying a motion for summary judgment is de novo. *Vail/Arrowhead, Inc.,* 954 P.2d at 611; *see also Joe Dickerson & Assocs. v. Dittmar,* 34 P.3d 995, 1003 (Colo.2001) (holding that an appellate court reviews a trial court's grant of a summary judgment motion de novo because it is a question of law); *Feiger, Collison & Killmer v. Jones,* 926 P.2d 1244, 1250 (Colo.1996) ("All summary judgments are rulings of law in the sense that they may not rest on the resolution of disputed facts. We recognize this by our *de novo* standard of reviewing summary judgments.")(quoting *Black v. J.I. Case Co.,* 22 F.3d 568, 571 n. 5 (5th Cir.1994)) (internal quotation marks omitted). In the case before the court, the question of the existence or non-existence of a duty from a therapist to a non-patient is a question of law. On summary judgment, the trial court concluded that the defendant owed no duty to the plaintiff; the court of appeals reviewed that conclusion de novo and reversed it. It now falls to us to resolve the legal issue.

### B.

The plaintiff contends that, because no finder of fact has ever examined the evidence in this case, "there remain many more unresolved points of contention concerning who did what to whom." However, the only salient issue of fact is determining who Ryder's patients were. When addressing findings of fact, we are bound by the trial court's determinations if they are supported by substantial evidence in the record. *E.g., Fowler Irrevocable Trust 1992–1 v. City of Boulder,* 17 P.3d 797, 802 (Colo.2001); *Mallon Oil Co.*

*v. Bowen/Edwards Assocs.,* 965 P.2d 105, 110 (Colo.1998). After examining that evidence, we agree with the trial court that the plaintiff failed to sustain her burden of presenting sufficient evidence to establish that the defendant was the entire family's therapist and therefore owed a physician-patient duty to the plaintiff in addition to her duty to the children. We need look no further into the facts in order to address this case.

### III.

Hence, we arrive at the crux of the case: did the defendant owe the plaintiff a duty of care when she sent the letter including her opinion regarding the presence of parental alienation to three individuals: the plaintiff, Mitchell, and the children's new therapist. The defendant contends that by holding defendant to a duty of care to a non-patient third party, the court of appeals has inappropriately extended the general principles of negligence. We agree.

### A.

To establish a prima facie case for negligence, a plaintiff must show that the defendant owed a legal duty of care to the plaintiff, the defendant breached that duty, the plaintiff suffered injury, and the defendant's breach caused the plaintiff's injury. *Greenberg v. Perkins,* 845 P.2d 530, 533 (Colo.1993). If a negligence action is based on facts that do not impose a duty of care upon a defendant for a plaintiff's benefit, the claim will fail. *Id.; Perreira v. Colorado,* 768 P.2d 1198, 1208 (Colo.1989).

Whether a specific defendant owes a specific plaintiff a legal duty and the scope of any such duty are questions of law properly determined by a court. *Martinez v. Lewis,* 969 P.2d 213, 218 (Colo.1998); *Greenberg,* 845 P.2d at 536. A court's determination regarding the existence of a legal duty is " 'an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is [or is not] entitled to

---

4. Whether the expression of a professional opinion that one parent was alienating the children from the other parent is protected speech under the First Amendment to the United States Constitution.

protection.'" *Univ. of Denver v. Whitlock,* 744 P.2d 54, 57 (quoting W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 53, at 358 (5th ed. 1984)) (alterations in *Whitlock*). The court should base its determination on several factors including: the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the defendant's conduct, the magnitude of the burden of guarding against the harm, and the consequences of placing the burden of a duty on the defendant. *Martinez,* 969 P.2d at 218; *Greenberg,* 845 P.2d at 536. Colorado law recognizes that these factors are not exclusive and allows a court to consider any other relevant factors founded on the competing individual and social interests implicated by the particular facts of the case at issue. *Greenberg,* 845 P.2d at 536 (quoting *Perreira,* 768 P.2d at 1209). Because no one factor controls the analysis, the question of whether a duty exists in a certain situation is based on "fairness under contemporary standards—that is, would reasonable persons recognize and agree that a duty of care exists." *Greenberg,* 845 P.2d at 536.

### B.

This court has addressed cases raising the issue of whether a health care provider owes a third party a legal duty of care, albeit in different factual situations. This court first dealt with the issues surrounding the duty of a state psychiatrist to the surviving wife of a policeman shot by a mentally ill individual recently released from an involuntary commitment to a state mental health center for short-term treatment. *Perreira v. Colorado,* 768 P.2d 1198, 1201 (Colo.1989). We held that when considering whether to release a patient, the state psychiatrist had a legal duty to exercise due professional care in determining whether the patient had a propensity for violence that would create an unreasonable risk of bodily harm to others. If the psychiatrist knew, or should have known, that such a danger existed, he had an obligation to take reasonable precautions to protect the public from the grave risks created by the patient's release. *Id.* at 1220.

Next, in *Greenberg v. Perkins,* 845 P.2d 530, 530–31 (Colo.1993), we addressed a phy-sician's duty to an examinee for alleged injuries resulting from testing procedures performed by a third party but requested by a physician pursuant to an independent medical evaluation. In that case, the examinee claimed injuries resulting from a bus accident and subsequently brought a personal injury action. *Id.* at 531. The defendants in the underlying suit requested an independent medical examination of the plaintiff. The independent physician examined her and then referred her for a functional capacity test. The plaintiff claimed that during the testing, she incurred additional severe injuries, and she brought suit against the independent physician alleging malpractice. We determined that the physician did owe a limited duty of care to an examinee who is not his patient to refrain from injuring the patient during the examination, including abstaining from referring the examinee for testing that would foreseeably result in injury. *Id.* at 533.

In *Martinez v. Lewis,* 969 P.2d 213, 218 (Colo.1998), we returned to the question of the scope of the duty a physician owes to an examinee when conducting an independent medical examination at the request of a first party insurer. The examinee in that case sued the physician for professional malpractice based·on his report to the insurance company that the examinee was malingering and the insurance company's subsequent decision to deny coverage for future care. *Id.* at 215. After weighing the factors relevant to the existence of a duty, this court concluded that the physician did not owe a duty to the examinee when formulating an unfavorable independent medical examination report upon which the insurance company relied in denying coverage. *Id.* at 220.

The court of appeals too has addressed the question of when a defendant health care provider owes a non-patient third party a duty of care. In *Montoya v. Bebensee,* 761 P.2d 285, 286 (Colo.App.1988), the mother of a child retained a psychologist for purposes of rendering an opinion about whether the father of the child had sexually abused her. An unlicensed associate of the psychologist concluded without administering any psychological testing and based solely on the child's

body language, that the father of the child had indeed sexually abused his daughter. *Id.* at 287. Based on this determination, the associate instructed the child's mother to limit the father's interaction with the children to one hour per week, in direct violation of court orders. Additionally, she reported her conclusion to a social worker who had previously investigated the case and concluded that there was no basis to suspect the father of abuse. The social worker informed the associate of her prior conclusion, but the associate nevertheless filed a report of suspected child abuse with the county. *Id.* Further, upon receiving a second opinion from another psychologist who had serious doubts regarding the alleged sexual abuse, the associate dismissed the opposing opinion as "irrelevant" and "not helpful," and subsequently testified for the mother that the father had indeed sexually abused the child. *Id.*

Based on these circumstances, after considering both the "great social utility of having therapists make reports of suspected child abuse and the significant risk of substantial injury that may occur to one who is falsely accused of being a child abuser," the court of appeals concluded that the associate owed a duty to the father in this case. *Id.* at 288. It stated, "a mental health care provider owes a duty to any person, who is the subject of any public report or other adverse recommendation by that provider, to use due care in formulating any opinion upon which such a report or recommendation is based." *Id.* at 289.

The court of appeals revisited the issue most recently in *Card v. Blakeslee*, 937 P.2d 846, 847 (Colo.App.1996). In that case, the plaintiff alleged that, during therapy with the defendant, the plaintiff's adult daughter experienced false memories of physical and sexual abuse by the plaintiff. *Id.* at 848. The plaintiff complained that the defendant had published a letter authored by the daughter accusing the plaintiff and others of past abuse; and that the defendant had written and published a second letter recommending that the daughter have no further contact with her family at that time. *Id.* In addressing the plaintiff's negligent infliction of emotional distress claim, the court of appeals distinguished *Montoya* on the basis that the defendant did not render any opinion accusing the plaintiff of abuse. *Id.* at 850. It further determined that the defendant did not publish "a public report or recommendation accusing plaintiff of abuse as those terms were used in *Montoya*." *Id.* Thus, the court held that the plaintiff had failed to prove the existence of a duty as described in *Montoya*. *Id.*

### C.

Thus, we find ourselves in the following factual and legal circumstance. There is no evidence in the record to support a conclusion that the plaintiff was Ryder's patient. Rather, the children were Ryder's patients, and as such, Ryder owes them a duty of care, and they have rights to pursue causes of action against her for negligence or otherwise. The plaintiff was a third-party to the patient/therapist relationship, and we must now determine whether Ryder owed her a duty of care as well.[7] As we noted in *Martinez v. Lewis*, 969 P.2d 213, 218 (Colo.1998), in analyzing the legal question of whether a duty exists, there are various factors that come into play. A court must examine the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the defendant's conduct, the magnitude of the burden of guarding against the harm, and the consequences of placing the burden of a duty on the defendant.

First addressing the risk involved, we agree that there is a risk of injury to a parent when a therapist expresses concern about poor parenting of one kind or another. The risks could include diminished parenting time, or in the extreme case, perhaps a change in custody. Those risks are real and

---

**7.** We note that this case does not concern the provisions of section 14–10–127, 5 C.R.S. (2002), which specifically allows the court to order a mental health care professional to complete an evaluation and written report concerning disputed issues surrounding the allocation of parental responsibilities or parenting time arrangements. In this case, the court neither appointed nor approved the selection of the mental health care professional, and Ryder did not complete her evaluation pursuant to court order.

potentially very damaging to the parent. By this opinion, we do not intend to minimize the effect on a parent of reduced access to or time with his or her child. However, in the case of misdiagnosis, the damage would also potentially be visited upon the child and in that situation, the law already provides protection. Specifically, the child/patient has the right to seek redress for misdiagnosis of parental alienation or poor parenting for any injuries caused to him or her and the therapist has a resultant incentive to diagnose and treat carefully and competently.

Furthermore, the risks to the parent of a misdiagnosis of parental alienation do not rise to the level of criminal repercussions or even termination of parental rights, such as those associated with an accusation of sexual abuse. A false allegation against a parent of child sexual abuse can cause substantial injury. *See, e.g., Montoya v. Bebensee,* 761 P.2d 285, 288 (Colo.App.1988); *Althaus v. Cohen,* 562 Pa. 547, 756 A.2d 1166, 1170 (2000) (noting that being "falsely accused of sexual abuse is undoubtedly a substantial harm, a harm which is readily foreseeable"); Heather J. Rhoades, *Zamstein v. Marvasti: Is A Duty Owed To Alleged Child Sexual Abusers?,* 30 Conn. L.Rev. 1411, 1412 (1998) (recognizing that "the climate surrounding child sexual abuse is such that 'allegations alone are quickly raised to the status of evidence signifying abuse.'") (quoting Thomas M. Horner & Melvin J. Guyer, *Prediction, Prevention, and Clinical Expertise in Child Custody Cases in Which Allegations of Child Sexual Abuse Have Been Made: II. Prevalence Rates of Child Sexual Abuse and the Precision of "Tests" Constructed to Diagnosis It,* 25 Fam.L.Q. 381, 387 (1991)). *But see* Cynthia Grant Bowman & Elizabeth Mertz, *A Dangerous Direction: Legal Intervention in Sexual Abuse Survivor Therapy,* 109 Harv. L.Rev. 549, 579 (1996) (noting that in refusing to impose a duty of care to a third party in child abuse circumstances, courts have recognized "society's interest in eradicating the sexual abuse of children and in encouraging the mental health profession to examine and diagnose cases involving such abuse"). Accordingly, we distinguish cases in which a therapist makes allegations of sexual abuse by a parent from cases in which the therapist misdiagnosis improper parenting skills or even parental alienation.

The risks of injury associated with a misdiagnosis of parental alienation are foreseeable, but perhaps not likely to occur. One therapist's opinion is but one of many factors a court might examine in determining custody and parenting time arrangements. § 14–10–124(1.5), 5 C.R.S. (2002). As exemplified by the facts of this case, the custody and parenting time orders might be unaffected by that particular therapist's opinion. Again, in contrast to sexual abuse allegations, the likelihood of actual injury resulting is relatively minimal.

That harm must be weighed against the possible utility of encouraging therapists to treat children experiencing adjustment problems associated with a divorce and communicate their findings to the involved parents. We conclude that the balance weighs in favor of disclosure. Therapists need the ability to convey to the parents not only what the child's issues may be, but also what role the parents may be playing in exacerbating those issues. A threat of liability stemming from even minor diagnoses and suggested changes presents a barrier to treating and assisting a child who is having trouble reconciling a traumatic divorce situation.

The magnitude of the burden of guarding against the harm also weighs against finding a duty here. We have stressed throughout this opinion that therapists clearly owe a duty to their patients: the children. Therapists are required to provide full and effective treatment. That duty may demand disclosure to parents. Guarding against the harm of a misdiagnosis of parental alienation could indeed thwart the fulfillment of the duty to the child. Thus, if the therapist owed a duty to a non-patient parent, that duty could present a barrier to the competent and full treatment of the children.

■ Therefore, we now conclude that, under the facts presented here, Ryder did not owe the plaintiff a duty of care that would permit the plaintiff recourse arising

out of Ryder's letter regarding the presence of parental alienation.[8]

## IV.

Citing section 13–17–102, 5 C.R.S. (2002), the trial court granted the defendant's Motion for Attorney's Fees concluding that the plaintiff's claims in this case were substantially groundless, frivolous, and vexatious, both legally and factually. The plaintiff and her attorney appealed the trial court's award of costs and attorney fees to the court of appeals. After concluding that the defendant owed a duty of care to the plaintiff arising out of the defendant's letter concerning the presence of parental alienation, the court of appeals determined that the plaintiff's claim was not substantially frivolous, groundless, or vexatious within the meaning of section 13–27–102. *Mitchell v. Ryder*, 20 P.3d 1229, 1234 (Colo.App.2000). Because it determined that the trial court erred in awarding costs and attorney fees on that claim and because the trial court's order did not separate fees relating to that claim from fees originating from plaintiff's other claims, the court of appeals concluded that the court should revisit the entire attorney fees issue. *Id.* It instructed that, if the trial court determined that an attorney fees award was appropriate, the trial court should make express findings pertaining to the relevant factors identified in section 13–17–103. *Id.*

Neither party sought certiorari on the issue of the trial court's award of attorney fees. Accordingly, the court of appeals judgment reversing and remanding the attorney fees order stands. Therefore, on remand, the trial court will need to address any attorney fees in light of our opinion.

## V.

In conclusion, we reverse the court of appeals' holding and affirm the trial court's order of summary judgment and dismissal on all claims. We return this case to the court of appeals for reinstatement of the trial court order dismissing those claims and for re-

mand to the trial court for consideration of any remaining issues, including questions of attorney fees.

Justice MARTINEZ and Justice BENDER do not participate.

---

8. In terms of the questions on certiorari, we are answering questions one and two in the negative. Because of that resolution, we need not reach the remaining issues on which we granted certiorari.