2015 COA 143

**Brian LAUGHMAN, Plaintiff–Appellant,**

v.

**Juris GIRTAKOVSKIS, Defendant–Appellee.**

**Court of Appeals No. 14CA1506**

Colorado Court of Appeals, Division VII.

Announced October 8, 2015

Garline Driscoll, LLC, David J. Driscoll, Jeffrey S. Rose, Louisville, Colorado, for Plaintiff–Appellant.

Campbell, Latiolais & Averbach, LLC, Colin C. Campbell, Kirstin M. Dvorchak, Denver, Colorado, for Defendant–Appellee.

Opinion by JUDGE ASHBY

¶1 .Plaintiff, Brian Laughman, appeals from the trial court's order granting summary judgment in favor of defendant, Juris Girtakovskis. We conclude that the martial arts sparring match between Mr. Laughman and Mr. Girtakovskis was an inherently dan-

gerous activity and, thus, Mr. Girtakovskis owed no duty of ordinary care to Mr. Laughman. We therefore affirm.

## I. Background

¶ 2 This case arises from a martial arts sparring session. Mr. Girtakovskis was preparing to test for his black belt. As part of a pre-test, two other students were asked to attack him so that he could demonstrate his skill and control in defending himself. Mr. Laughman was one of the students who agreed to spar with Mr. Girtakovskis and assume the role of an attacker.

¶ 3 The attackers were in full protective gear, including helmets. Mr. Laughman's helmet, however, did not have a facemask. The demonstration was supposed to involve light sparring, and the head was off limits as a target.

¶ 4 At some point during the pre-test, Mr. Girtakovskis performed a ridge hand strike, an accepted technique in martial arts sparring, that unintentionally connected with Mr. Laughman's face. The strike resulted in serious facial and visual damage. Mr. Laughman has had multiple surgeries to repair the damage and continues to suffer permanent vision impairment.

¶ 5 Mr. Laughman initiated the underlying action, asserting a claim for negligence. Mr. Girtakovskis filed a motion for summary judgment, asserting that Colorado does not recognize negligence claims in physical sports cases and, because Mr. Laughman did not claim that Mr. Girtakovskis's conduct was reckless or intentional, he failed to state a claim upon which relief could be granted. Accordingly, Mr. Girtakovskis asserted that he was entitled to judgment as a matter of law.

¶ 6 The trial court agreed and granted the summary judgment motion. It found that "martial arts fighting is a violent activity that inherently subjects participants to an unreasonable risk of harm," and concluded that Colorado does not recognize negligence claims in cases involving inherently dangerous sports.

## II. Discussion

¶ 7 Mr. Laughman raises several contentions of error on appeal; however, we agree with Mr. Girtakovskis that, other than the contention regarding section 13–21–111.7, C.R.S.2015, which we address separately below, those individual contentions can be summarized as a single issue: Did the trial court err by finding that Colorado does not recognize liability for the negligent conduct of a co-participant in an inherently dangerous sport? We perceive no error, and affirm the trial court's order.

¶ 8 We review the trial court's granting of a motion for summary judgment de novo. *See Teneyck v. Roller Hockey Colo., Ltd.,* 10 P.3d 707, 709 (Colo.App.2000). Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." C.R.C.P. 56. In reviewing the order, "the nonmoving party is entitled to all favorable inferences that may reasonably be drawn from the undisputed facts, and all doubts as to whether a triable issue of fact exists must be resolved against the moving party." *Graven v. Vail Assocs., Inc.,* 909 P.2d 514, 516 (Colo.1995), *superseded by statute on other grounds as stated in Fleury v. IntraWest Winter Park Operations Corp.,* 2014 COA 13.

### A. Negligence in an Inherently Dangerous Sport

¶ 9 To prevail on a claim of negligence, the plaintiff must show: (1) that the defendant owed him or her a legal duty of care; (2) that the defendant breached that duty; (3) that the plaintiff suffered injury; and (4) the cause of that injury was the defendant's conduct. *See Westin Operator, LLC v. Groh,* 2015 CO 25, ¶ 23, 347 P.3d 606; *Keller v. Koca,* 111 P.3d 445, 447 (Colo.2005). Thus, to determine liability, the court must first determine if the defendant owed a legal duty to the plaintiff. *See Westin,* ¶ 24; *Keller,* 111 P.3d at 447 ("A negligence claim fails where the law does not impose a duty on the defendant to act for the plaintiff's benefit."). The existence of a duty is a legal question that we review de novo. *See Westin,* ¶ 18;

*Keller,* 111 P.3d at 447; *Vigil v. Franklin,* 103 P.3d 322, 325 (Colo.2004).

¶ 10 To determine whether a legal duty exists, courts consider a number of factors, including the nature of the relationship between the parties, the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, the consequences of placing the burden upon the actor, the convenience of administration, the capacity of the parties to bear the loss, a policy of preventing future injuries, and the moral blame attached to the wrongdoer. *See Westin,* ¶ 25; *Keller,* 111 P.3d at 447. This list is not exhaustive and no single factor is determinative. *See Collard v. Vista Paving Corp.,* 2012 COA 208, ¶ 30, 292 P.3d 1232 (" 'Colorado law recognizes that these factors are not exclusive and allows a court to consider any other relevant factors founded on the competing individual and social interests implicated by the particular facts of the case at issue.' " (quoting *Ryder v. Mitchell,* 54 P.3d 885, 890 (Colo.2002))).

¶ 11 Generally, every individual owes a duty of ordinary care not to create an unreasonable risk of harm to others. *Shin v. Ahn,* 42 Cal.4th 482, 64 Cal.Rptr.3d 803, 165 P.3d 581, 584 (2007); *Karas v. Strevell,* 227 Ill.2d 440, 318 Ill.Dec. 567, 884 N.E.2d 122, 129 (2008). Contact sports, however, present a special circumstance because, by their nature, they involve an unreasonable risk of harm. Simply by participating in the sport, participants could cause or suffer significant injuries, even though their conduct may fall within the rules, and indeed the purpose, of the sport. *See, e.g., Hackbart v. Cincinnati Bengals, Inc.,* 601 F.2d 516, 520 (10th Cir. 1979) ("[S]ubjecting another to unreasonable risk of harm, the essence of negligence, is inherent in the game of football, for admittedly it is violent.").

¶ 12 Colorado courts have not yet addressed whether a participant in a contact sport, specifically a martial arts sparring match, owes a duty to fellow participants other than to refrain from intentional or reckless conduct. However, the majority of courts in other jurisdictions that have addressed this issue hold that when a sport is inherently dangerous, a defendant is generally not liable for damage or injury caused by his or her negligent conduct. *See, e.g., Bevolo v. Carter,* 447 F.3d 979, 982 (7th Cir.2006) ("Illinois courts have established the 'contact sports exception' to negligence. Under this exception, voluntary participants in contact sports may be held liable for injuries to co-participants caused by wilful and wanton or intentional misconduct, but they are not liable for injuries caused by ordinary negligence."); *Knight v. Jewett,* 3 Cal.4th 296, 11 Cal.Rptr.2d 2, 834 P.2d 696, 704 (1992) ("[T]he question whether the defendant owed a legal duty to protect the plaintiff from a particular risk of harm does not turn on the reasonableness or unreasonableness of the plaintiff's conduct, but rather on the nature of the activity or sport in which the defendant is engaged and the relationship of the defendant and the plaintiff to that activity or sport."); *Dunagan v. Coleman,* 427 S.W.3d 552, 555–57 (Tex.App.2014). To be liable, therefore, the defendant's conduct must be so reckless as to be outside the range of the ordinary conduct in the sport or intentionally harmful. *See, e.g., Kahn v. E. Side Union High Sch. Dist.,* 31 Cal.4th 990, 4 Cal.Rptr.3d 103, 75 P.3d 30, 32 (2003); *Ross v. Clouser,* 637 S.W.2d 11, 13–14 (Mo.1982). And even when a defendant violates the rules of the game, he will generally not be liable for injury unless his conduct is beyond simple negligence. *See Knight,* 11 Cal.Rptr.2d 2, 834 P.2d at 710; *Karas,* 318 Ill.Dec. 567, 884 N.E.2d at 131, 133.

¶ 13 Some jurisdictions hold that a defendant is not liable because he owes no duty of ordinary care to the plaintiff. *See, e.g., Karas,* 318 Ill.Dec. 567, 884 N.E.2d at 131 ("[T]he contact sports exception is an objective doctrine that defines the scope of the defendant's duty."). Others hold that, although a defendant owes a duty of ordinary care, because the plaintiff has assumed the risk of injury by participating in an inherently violent sport, the defendant does not breach that duty with merely negligent conduct. *See, e.g., Knight,* 11 Cal.Rptr.2d 2, 834 P.2d at 711; *Pfenning v. Lineman,* 947 N.E.2d 392, 403–04 (Ind.2011). Mr. Laugh-

man's reliance on *Wells v. Colorado College,* 478 F.2d 158 (10th Cir.1973), is misplaced. The Tenth Circuit did not reach the issue that we are called on to decide.

¶ 14 On the undisputed facts here, we conclude that co-participants in a martial arts sparring activity, an inherently dangerous sport, do not owe each other a duty of ordinary care that would support a negligence claim. We reach this conclusion for the following reasons.

¶ 15 First, when two people voluntarily agree to participate in a sport that is inherently dangerous, such as the martial arts sparring engaged in by Mr. Laughman, we assume that each participant knows of the risks associated with such participation. *See Sanperi v. Junsch,* 274 A.D.2d 462, 711 N.Y.S.2d 32, 33 (N.Y.App.Div.2000) ("By engaging in a sport or recreational activity, a participant consents to those commonly-appreciated risks which are inherent in the nature of the sport and flow from such participation."). Knowing the rules of the sport, each participant should know that the opposing participants will work to prevent him or her from achieving his or her goal. Thus, their relationship to each other is inherently adversarial and necessarily involves an unreasonable risk of harm.

¶ 16 Second, many courts have recognized that athletes vigorously participate in sports. Such vigorous participation means participants will not always be able to avoid causing injury. Even when they act reasonably, in the heat of the physical activity, accidents are likely to occur. And if the law were to hold participants liable for negligent, as opposed to reckless or intentional, conduct, it would have a chilling effect on the physical aspects of the activity. *See, e.g., Knight,* 11 Cal.Rptr.2d 2, 834 P.2d at 710; *Pfister v. Shusta,* 167 Ill.2d 417, 212 Ill.Dec. 668, 657 N.E.2d 1013, 1018 (1995); *Ross,* 637 S.W.2d at 14.

¶ 17 Third, it is undisputed that the participants in the sparring match in this case recognized the inherent danger in the activity by wearing padded headgear, chest protectors, and gloves, and that Mr. Girtakovskis wore a face shield, which Mr. Laughman did not wear.

¶ 18 Further, most sports acknowledge that mistakes will happen and that the rules of conduct will be broken on occasion. Thus, where a player negligently violates the rules of a sport, there are already built-in consequences such as fouls, ejections, and other penalties. *See Jaworski v. Kiernan,* 241 Conn. 399, 696 A.2d 332, 338 (1997); *Karas,* 318 Ill.Dec. 567, 884 N.E.2d at 131, 133.

¶ 19 The martial arts sparring in this case necessarily involved physical contact. Although martial arts competitions are regulated and the goal is generally to obtain points, the sparring match here involved attacking, defending, striking maneuvers, and blocking. *See Barakat v. Pordash,* 164 Ohio App.3d 328, 842 N.E.2d 120, 123 (2005) (describing techniques employed in sambo martial arts); *Levine v. Gross,* 123 Ohio App.3d 326, 704 N.E.2d 262, 264 (1997) (describing karate techniques). Therefore, we agree with the trial court that the sparring match between Mr. Laughman and Mr. Girtakovskis was an inherently dangerous sport.

¶ 20 Accordingly, we agree with those jurisdictions that hold that a participant in a contact sport, here martial arts sparring, does not owe his or her fellow participants a duty of ordinary care. *See Pfenning,* 947 N.E.2d at 401–02 (collecting cases involving physical contact). Rather, it is only when a participant's conduct moves beyond the anticipated vigorous bounds of the activity—beyond negligence and into the realm of reckless or intentional conduct—that he or she may become legally liable for that conduct. As one court noted, there is an inverse relationship between duty and dangerousness when it comes to sports: "'the standard of care rises as the inherent danger of the sport falls.'" *Levine,* 704 N.E.2d at 264 (quoting *Thompson v. McNeill,* 53 Ohio St.3d 102, 559 N.E.2d 705, 709 (1990)).

¶ 21 Mr. Laughman asserts that the rules of the sparring match in which he was involved specified that there was to be no contact with the head or face. However, knowledge that physical contact might occur, including to the head and face, is evidenced by the fact that the participants were wearing protective headgear, padded gloves, and

chest pads. Further, all parties agree that Mr. Girtakovskis did not act recklessly or intentionally. His striking Mr. Laughman during the sparring match was an unintentional act. And there was evidence before the trial court that the ridge hand strike that Mr. Girtakovskis used is a common technique used in this form of martial arts sparring.

¶ 22 Therefore, we conclude that, due to the inherent danger involved in the martial arts sparring match in this case and the fact that the conduct at issue was within the realm of conduct anticipated in the sport, Mr. Girtakovskis did not owe a duty of ordinary care to Mr. Laughman.

### B. Assumption of the Risk

¶ 23 Mr. Laughman also contends that section 13–21–111.7 placed the determination of an assumption of the risk defense in the sole province of the jury. Accordingly, he asserts, the trial court erred by granting Mr. Girtakovskis's summary judgment motion and deciding the case as a matter of law.

¶ 24 Section 13–21–111.7 provides, among other things,

> Assumption of a risk by a person shall be considered by the trier of fact in apportioning negligence.... In any trial to a jury in which the defense of assumption of risk is an issue for determination by the jury, the court shall instruct the jury on the elements as described in this section.

¶ 25 By its terms, the assumption of risk statute applies when the jury is required to apportion negligence. But before the trier of fact considers the question of assumption of the risk, it must first find, as a matter of law, that the defendant owed a legal duty to the plaintiff. *Vigil,* 103 P.3d at 325 ("A defendant always has the option at common law of arguing that he did not owe a duty to an injured plaintiff. Structurally, this argument is independent of and arises before other recognized negligent tort defenses such as contributory negligence and comparative fault. Where a defendant successfully argues no duty, there is no subsequent inquiry into negligence; considering additional defenses under the breach, causation, and damages elements is entirely unnecessary."); *see Ross,* 637 S.W.2d at 14 ("A plaintiff's assump-

tion of the risk can be an affirmative defense to a charge of reckless conduct.").

¶ 26 Mr. Laughman's argument that the trial court improperly usurped the role of the jury is therefore unavailing. Based on our conclusion above that Mr. Girtakovskis did not owe Mr. Laughman a duty of ordinary care, we conclude that the trial court properly refrained from considering whether Mr. Laughman had assumed the risk of injury by participating in the martial arts sparring match. And, because the determination of the existence of a legal duty is a question of law, and not an issue for the jury's consideration, the court could properly resolve the matter on a motion for summary judgment.

### III. Conclusion

¶ 27 Therefore, we agree with the trial court that Mr. Girtakovskis is entitled to judgment as a matter of law and affirm the court's order granting summary judgment.

JUDGE LICHTENSTEIN and JUDGE MILLER concur.