Carolyn A. RALEIGH, Kevin P. Raleigh, and Kevin C. Raleigh, Petitioners,

v.

PERFORMANCE PLUMBING AND HEATING, INC., Respondents.

No. 04SC695.

Supreme Court of Colorado, En Banc.

Feb. 21, 2006.

Rehearing Denied April 3, 2006.*

* Chief Justice MULLARKEY would grant the Petition.

Fish & Coles, Kenneth R. Fish, Denver, Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, Burke & Neuwirth, P.C., Dean S. Neuwirth, Denver, for Petitioners.

Harris, Karstaedt, Jamison & Powers, P.C., A. Peter Gregory, Englewood, Hale Friesen, LLP, Richard A. Westfall, Denver, for Respondent.

Snell & Wilmer, LLP, Lee Mickus, Denver, Pacific Legal Foundation, for Amici Curiae Pacific Legal Foundation and Colorado Civil Justice League.

Hall & Evans, L.L.C., Alan Epstein, Denver, for Amici Curiae National Association of Mutual Insurance Companies and Property and Casualty Insurers Association of America.

Montgomery Little & McGrew, P.C., Patrick T. O'Rourke, Kari MacKercher Hershey, Greenwood Village, for Amicus Curiae Colorado Defense Lawyer's Association.

HOBBS, Justice.

We granted certiorari to review the court of appeals' judgment in *Raleigh v. Performance Plumbing & Heating, Inc.*, 109 P.3d 978 (Colo.App.2004) ("*Raleigh II* ").[1] Petitioners Carolyn A. Raleigh, her son, Kevin C. Raleigh ("the Raleighs"), and Carolyn's husband, Kevin P. Raleigh[2] sued Performance Plumbing and Heating, Inc. ("Performance Plumbing") for damages they suffered in an automobile accident caused by Cory Weese ("Weese"). Weese, a Performance Plumbing employee, was driving his own truck on the way home from work when he caused the accident.

A jury found that Weese was not acting within the scope of his employment for Performance Plumbing when he caused injury to the Raleighs. Nevertheless, the jury awarded damages against Performance Plumbing for negligently hiring Weese. In rejecting both the Raleighs' respondeat superior and negligent hiring causes of action against Performance Plumbing, the court of appeals relied on the jury's special finding that Weese was not acting within the scope of his employment when he caused the injuries:

> Having specifically found that employee was not acting within the scope of his employment at the time of the accident, the jury had no logical basis to find that defendant's breach of its duty to use rea-

---

1. The issues we took on review are:

 1) Whether the court of appeals improperly restricted the tort of negligent hiring when it ruled that an employer cannot be directly liable for negligent hiring if the employee acts outside the "scope of employment," a requirement for finding an employer vicariously liable under the separate doctrine of respondeat superior?

 2) Whether an employee is within the scope of employment while driving his truck home from work when his employer requires him to bring his personal truck back and forth between home and work for use on the job each day?

2. Although the husband filed claims against Performance Plumbing for negligence and loss of consortium, this opinion focuses on the negligent hiring and respondeat superior claims by the mother and son.

sonable care in hiring employee was the cause of plaintiffs' injuries.

*Id.* at 982.

We uphold the judgment of the court of appeals requiring dismissal of the respondeat superior and negligent hiring claims by the Raleighs against Performance Plumbing for the accident Weese caused, but on different grounds as to the negligent hiring claim. The court of appeals ruling invalidated the Raleighs' negligent hiring award based on their failure to prove the causation element of the tort. Our holding focuses on the first element of the tort, the scope of the employer's legal duty based upon the job duties for which the employer hired the employee.

We hold that the tort of negligent hiring, when applicable under the circumstances of a particular case, can operate to hold an employer liable for intentional or negligent acts of an employee that are within or outside of the scope of employment. Under the facts of this case, however, the trial court should not have submitted the negligent hiring claim to the jury; having done so, it should have granted judgment in favor of Performance Plumbing notwithstanding the verdict. The accident occurred after Weese had finished his work day. The scope of Performance Plumbing's duty to the Raleighs under the tort of negligent hiring did not extend to the Raleighs because the job for which it hired Weese did not include driving to and from work.

## I.

Performance Plumbing is in the business of installing underground and in-house water and sewer plumbing at new residential construction sites in the Denver metropolitan area. The company utilizes metal construction trailers it rents for the purpose of storing tools, materials such as pipe, and equipment needed for jobs. The company expects its plumber employees to commute to a construction trailer, load up the items needed for the particular job they are assigned, and proceed to the job site. At the end of the day, employees are required to return company tools to a construction trailer and may store their own tools there. Unless assigned a company vehicle, employees use their own vehicles to commute to and from work.

The work day is from seven in the morning to three-thirty in the afternoon. The work day typically starts when the employee reports to a construction trailer to pick up pipe and other materials needed for that day's job. The employee then proceeds to the job site. Work at the job site does not require frequent contact with members of the public. The employee typically ends the work day by returning company materials and tools to a construction trailer. When there is no need for an employee to go from home to a construction trailer or from the job site back to a construction trailer, the work day may start or end at the job site.

Whether employees drive a company vehicle or their own vehicle, Performance Plumbing does not consider commuting from home to a construction trailer or directly from home to a job site, and back home from a construction trailer or directly from a job site, to be part of the work day. Employees are not compensated for such commute time or reimbursed for mileage spent in commuting.

As part of their employment, employees are expected to drive for the company during the work day for the purpose of getting job materials and company tools from the construction trailers to job sites and back to construction trailers. The employer therefore requires a valid driver's license as part of the application process, but it relies on the applicant's truthfulness in stating whether or not he or she holds a valid driver's license. Performance Plumbing checks driving licenses and records only as required by its insurance company when it assigns an employee one of the company vehicles to drive.

In April of 1996, Performance Plumbing hired Weese as an apprentice plumber on the recommendation of one of its employees who had known Weese since high school. At the time Performance Plumbing hired him, Weese completed a standard employment application that contained inquiries into the status of his driver's license and driving history. Weese stated that he had a valid license and no moving violations, although his license was then under suspension. Nevertheless, at

the time he applied for the job, he was eligible for reinstatement of his license upon providing proof of insurance.[3] Weese signed a standard release form, enabling Performance Plumbing to investigate the status of his driver's license, but, in accordance with the company's practice, it conducted no further investigation when it hired him because it was not assigning him a company car to drive.

The company employee who recommended Weese for employment knew that he had a driving record that included moving violations and two accidents. He did not inform the company's president, who hired Weese, about Weese's driving record.

Sometime after Weese was hired and proved himself to be a reliable worker, Performance Plumbing in early 1997 equipped Weese's personal truck with a rack for transporting pipe from construction trailers to work sites. As part of his work day, the company paid Weese for travel time between the construction trailers and job sites, but it did not pay or reimburse Weese for the use of his vehicle.

On September 15, 1997, after his work day had ended and he was driving home, Weese collided with two cars. He entered the right lane of a three lane road to get around a large truck and be in position to make a right turn at the next major intersection, which was approximately one-half mile away. The right lane was bounded by a curb and gutter.

Two cars were stopped within the right lane, and their drivers were outside the vehicles. The Raleighs owned both vehicles, one of which was in tow behind the other. Standing between the cars, Carolyn Raleigh and her son were adjusting a tow strap when Weese's truck hit the back of the towed vehicle, forcing it into the lead vehicle.

Both of the Raleighs sustained severe injuries as a result of the accident. Seeking damages against Performance Plumbing, the Raleighs asserted negligent hiring and respondeat superior claims against the company as employer of Weese.

The court of appeals has had this case before it twice. On summary judgment, the trial court initially dismissed both claims against Performance Plumbing. In the first appeal, a division of the court of appeals held that genuine issues of material fact as to both claims required a trial. *Raleigh v. Performance Plumbing & Heating, Inc.*, No. 99CA1887, slip op. (Colo.App. Dec. 14, 2000) (not selected for official publication) ("Raleigh I").

On remand, the trial court submitted both causes of action to the jury. Utilizing a special verdict form, the jury found against the Raleighs on the respondeat superior claim and for them on the negligent hiring claim; the jury did not find the Raleighs to be negligent in any regard. The trial court entered judgment accordingly. Both parties moved for judgment notwithstanding the verdict; the trial court denied both motions.[4]

---

3. Weese's driving record includes a 1990 careless driving conviction involving an accident; a 1991 conviction for violation of a red light signal; a 1991 defective vehicle conviction; a 1992 careless driving conviction involving an accident, and driving without insurance. As a result of accumulated points, his license was suspended until August 13, 1992. Prior to reinstatement, he drove without a valid license and reinstatement was deferred for one year, until August 12, 1993. His license was reinstated on November 4, 1993. In April, 1995, Weese received a ticket for speeding 1–4 miles per hour over the limit. In November 1995, he was convicted of failure to signal for a turn and did not have liability insurance. As a result, his license was suspended until January 17, 1996. At the time Performance Plumbing hired him, he was eligible for license reinstatement upon providing proof of insurance coverage and paying a reinstatement fee, but he did not proceed to obtain insurance and have his license reinstated.

4. The trial court ordered the following judgment against Performance Plumbing on the Raleighs' negligent hiring claims: judgment in favor of Carolyn A. Raleigh in the amount of $1,187,319 plus prejudgment interest in the amount of $552,565 for a total judgment of $1,739,884; judgment in favor of Kevin C. Raleigh in the amount of $795,000 plus prejudgment interest in the amount of $369,984 for a total judgment of $1,164,984. The trial court also entered judgment against Performance Plumbing and in favor of Kevin P. Raleigh on his claims of negligence and loss of consortium in the amount of $94,200 plus prejudgment interest in the amount of $43,840 for a total judgment of $138,040. The jury found that the Raleighs were not negligent in any regard, and that Performance Plumbing was 30% negligent and Weese was 70% negligent in the accident.

On appeal, the court of appeals held that Performance Plumbing had a duty when hiring Weese to inquire into his driving record and there was sufficient evidence in that record to support a duty of reasonable care in hiring a safe driver who would not create an undue risk of harm to the public in performing his employment duties. *Raleigh II,* 109 P.3d at 981. The court of appeals also determined that there was sufficient evidence for the jury to determine that the company breached its duty to the driving public in hiring Weese. However, as to the tort element of causation, the court of appeals invalidated the jury's negligent hiring award in light of its special verdict finding that Weese was not acting within the scope of his employment when the accident occurred.

Accordingly, the court of appeals entered judgment against the Raleighs on both the negligent hiring and respondeat superior claims. The Raleighs seek reinstatement of the jury's verdict on the negligent hiring claim; they also reassert their respondeat superior claim despite the jury's verdict against them. We conclude as a matter of law that the Raleighs are not among the members of the public to whom Performance Plumbing owed a legal duty. Under the reasonably foreseeable aspect of its negligent hiring duty of care, the company's duty would extend only to those members of the public exposed to Weese's unsafe driving in the performance of his job duties.[5]

## II.

We hold that the tort of negligent hiring, when applicable under the circumstances of a particular case, can operate to hold an employer liable for intentional or negligent acts of an employee that are either within or outside of the scope of employment. Under the facts of this case, however, the trial court should not have submitted the negligent hiring claim to the jury; having done so, it should have granted judgment in favor of Performance Plumbing notwithstanding the verdict. The accident occurred after Weese had finished his work day. The scope of

Performance Plumbing's duty under the tort of negligent hiring did not extend to the Raleighs because the job for which it hired Weese did not include driving to and from work.

We also uphold the court of appeals' judgment affirming the trial court's judgment against the Raleighs on the respondeat superior claim of negligence in light of the evidence and jury's special verdict finding that Weese was not operating within the scope of his employment when the accident occurred.

### A.

### Standard of Review

■ To obtain submittal of a negligence claim to a jury, the plaintiff must establish a prima facie case demonstrating the following elements: (1) the existence of a legal duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was injured; and (4) the defendant's breach of duty caused the injury. *Keller v. Koca,* 111 P.3d 445, 447 (Colo.2005); *Ryder v. Mitchell,* 54 P.3d 885, 889 (Colo.2002); *see generally,* Restatement (Second) of Torts § 281 (1965).

Appropriately formulated and applied, tort principles adopted pursuant to the common law or legislative enactment are meant to deter and sanction conduct that results in victim injury and to remedy victim injury, in circumstances where the defendant owes a duty of care, defendant breaches the duty, that breach is the proximate cause of the plaintiff's injuries, and damages result. *See, e.g., Bayer v. Crested Butte Mountain Resort,* 960 P.2d 70, 80 (Colo.1998).

■ Thus, the first question in any negligence case is whether the defendant owed a legal duty to protect the plaintiff from injury. *Taco Bell, Inc. v. Lannon,* 744 P.2d 43, 46 (Colo.1987). Whether a specific defendant owes a duty to a specific plaintiff under the circumstances involved with a tort claim is a question of law we review de novo. *Vigil v. Franklin,* 103 P.3d 322, 325 (Colo.2004); *Ry-*

---

5. Thus, we overrule the court of appeals' duty, breach of duty, and causation holdings in *Raleigh*

*II,* 109 P.3d at 980–82.

*der,* 54 P.3d at 889; *Martinez v. Lewis,* 969 P.2d 213, 218 (Colo.1998).

 Negligent hiring cases are complex because they involve the employer's responsibility for the dangerous propensities of the employee, which were known or should have been known by the employer at the time of hiring, gauged in relation to the duties of the job for which the employer hires the employee. The employee's later intentional or nonintentional tort is the predicate for the plaintiff's action against the employer, so proof in the case involves both the employer's and the employee's tortious conduct.

The lesson to be learned from a successful negligent hiring suit is that the employer should not have hired the employee in light of that person's dangerous propensities or, having hired him or her, must exercise that degree of control over the employee necessary to avert that employee from injuring persons to whom the employer owed the duty of care when making the hiring decision. But, "[a] negligence claim against an employer will fail if it is based on circumstances in which the employer owed no duty of care." John R. Paddock, Jr., *Colorado Employment Law and Practice,* § 14.21, at 913 (2005).

 We conclude in the case before us that the court of appeals erred in its ruling that the causation element of the tort of negligent hiring came into play to bar the jury's award on the Raleighs' cause of action. The court of appeals utilized the jury's special verdict finding that Weese was not acting within the scope of his employment when he caused the accident. However, conduct of the employee outside of his or her employment can nonetheless be actionable as a breach of the employer's duty of care in a negligent hiring case, if the employer owed a duty of care to plaintiff when making the hiring decision.

Accordingly, we focus in this case on whether Performance Plumbing owed a duty of care to the Raleighs in the first instance. Analyzing the scope of the company's duty, we conclude that the Raleighs are not among those persons to whom it owed a duty of care in hiring Weese.

## B.

### Tort of Negligent Hiring

In 1992, we joined the majority of states in formally recognizing the tort of negligent hiring. *Connes v. Molalla Transp. Sys., Inc.,* 831 P.2d 1316, 1321 (Colo.1992). *Connes* focused on the duty element of the tort. We posited the scope of the employer's legal duty upon the employer's actual knowledge at the time of hiring or reason to believe that the person being hired, by reason of some attribute of character or prior conduct, would create an undue risk of harm in carrying out his or her employment responsibilities.[6] We observed that foreseeability of harm to the plaintiff is a prime factor in the duty analysis. A court should also weigh other factors, including the social utility of the defendant's conduct, the magnitude of the burden of guarding against the harm caused to the plaintiff, the practical consequences of placing such a burden on the defendant, and any additional elements disclosed by the particular circumstances of the case. *Id.* at 1320. No one factor is controlling; the question whether a duty should be imposed in a particular case is essentially one of fairness under contemporary standards—whether reasonable persons would recognize a duty and agree that it exists. *Id.*

When the duties of the job will bring the employee into frequent contact with mem-

---

**6.** The tort of negligent hiring is independent of a respondeat superior theory; under appropriate circumstances, this tort may apply to impose liability even though the employee is acting outside the scope of the employment. *Connes,* 831 P.2d at 1320–21. In fact, the vast majority of negligent hiring cases involve intentional torts committed by an employee who is not acting within the scope of his or her employment. In *Connes,* although we recognized a duty upon the employer of a commercial truck driver to hire a safe driver, we declined to require the employer to check the employee's criminal record which, if checked, would have revealed a criminal record that included violent acts. In that case, the employee sexually assaulted a woman while he was on a cross-country commercial trip. We held that the driver's contact with the woman was incidental to his employment, and the employer had no duty to further inquire into the employee's denial of a criminal record in the course of the hiring process. *Id.* at 1321–23.

bers of the public, or will involve close contact with particular individuals as a result of a special relationship between such persons and the employer, some courts have expanded the employer's duty and have required the employer to go beyond the job application and make an independent inquiry into the applicant's background; but, when the employment calls for incidental contact between the employee and other persons, there may be no reason for an employer to conduct any investigation of the applicant's background beyond obtaining past employment information and personal data during the application process. *Id.* at 1321.

The employer's duty to members of the public in both negligent hiring and negligent supervision cases stems from the principle that the employer receives benefits from having customers and business invitees and incurs responsibilities to them. Louis Buddy Yosha & Lance D. Cline, *Negligent Hiring and Retention of an Employee,* 29 Am.Jur. Trials 267, § 2 (2005). The Restatement (Second) of Agency addresses the tort of negligent hiring as follows:

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
>
> . . . .
>
> (b) in the employment of improper persons or instrumentalities in work involving risks of harm to others.

Restatement (Second) of Agency § 213 at 458.

The comment to this portion of the Restatement reveals that liability is predicated on the employer's reason to believe at the time of hiring that undue risk of harm would exist from employing that person.

> Liability results under the rule stated in this Section, not because of the relation of the parties, but because the *employer antecedently had reason to believe that an undue risk of harm would exist because of the employment.*

*Id.,* cmt. d at 460 (emphasis added).

■ The key word in this formulation, "antecedently," refers to the time of hiring. In explaining the nature of the employer's duty at the time of hiring, we have reiterated that the scope of the employer's duty in exercising reasonable care in a hiring decision depends on the employee's anticipated degree of contact with other persons in carrying out the job for which the employee was hired. *Moses v. Diocese of Colo.,* 863 P.2d 310, 328 (Colo.1993); *Van Osdol v. Vogt,* 908 P.2d 1122, 1132–33 n. 17 (Colo.1996); *Bear Valley Church of Christ v. De Bose,* 928 P.2d 1315, 1323–24 (Colo.1996). *See also Keller v. Koca,* 111 P.3d 445, 448–49 (Colo.2005) (holding that, to establish a duty of care towards the plaintiff in a negligent supervision case, evidence must show that the employee's acts are connected with the employment in time and place such that the employer would have reasonably foreseen the harm).

The job for which the defendant was hired in *Connes* consisted primarily of commercial vehicle driving. We recognized that employers of commercial drivers have a duty to investigate an applicant's driving record, in addition to what he or she provides in response to application questions or an employment interview. But, we cautioned in *Connes* that the tort of negligent hiring does not function as an insurance policy for all persons injured by persons an employer hires. *Connes,* 831 P.2d at 1321.

■ When driving is involved in performance of the job responsibilities, the duty is "to use reasonable care in hiring a safe driver who would not create a danger to the public *in carrying out the duties of the job.*" *Id.* at 1323 (emphasis added).

### C.

### Application to This Case

The Raleighs claim that Performance Plumbing owed a duty of care to them because Weese possessed a dangerous propensity in that he was a dangerous driver; had Performance Plumbing conducted a further investigation into his driving record, it would have discovered that Weese's license was under suspension and he had a record of moving violations and automobile accidents, despite his false statements in answer to the employment application questions. They contend that Weese was expected to drive as

part of his employment, and they put much emphasis on the benefit the employer obtained by outfitting his private vehicle with a pipe rack.

We agree with the Raleighs that Weese was expected to drive as part of his employment, but only as part of his work day from construction trailers to job sites and back from the job site to construction trailers.[7] The job required employees to commute to and from work on their own time. In this regard, this company is no different from any of a large number of Colorado employers who expect their employees to get to work on their own time and in their own way, and do not assume liability as part of their hiring decision to act as a surety for automobile accidents their employees may cause when commuting to and from work.

Whether Performance Plumbing owed a duty of care to the Raleighs boils down to whether reasonable persons would recognize and agree that a duty exists. *Connes,* 831 P.2d at 1320. The scope of the employer's duty of care in making the hiring decision extends to persons the employer should have reasonably foreseen the employee—who possesses the dangerous propensity the employer knew of, or reasonably should have known of—would come into contact with through the employment. *See* Paddock, *supra* § 14.22, at 915 (stating that "[a]n employer is found liable for negligent hiring if, at the time of hiring, the employer knew or had reason to believe that hiring the person would create an undue risk of harm to the people with whom the employee would likely have contact in performing customary job duties."); *see also DiCosala v. Kay,* 91 N.J. 159, 177, 450 A.2d 508, 518 (1982) (in regard to a duty owed by the employer to the plaintiff to exercise reasonable care in the selection and retention of the employee, stating that "the question presented is whether the employer, knowing of its employee's unfitness, incompetence or dangerous attributes when it hired or retained its employee, should have reasonably foreseen the likelihood that the employee through his employment would come into contact with members of the public, such as the plaintiff, under circumstances that would create a risk of danger to such persons because of the employee's qualities.").

Thus, the case before us could have presented a jury question on the negligent hiring claim had the accident occurred when Weese was driving to a job site from a construction trailer or from a job site to a construction trailer as part of his work.[8] But, our research has not disclosed any case that extends employer negligent hiring liability to off-duty driving of the type citizens undertake normally to get to and from their jobs. There is precedent that cautions courts against extending the tort of negligent hiring to off-duty commute accidents.

> Otherwise, any employer who fails to check the license status of employees, and who knows that it is necessary that employees drive to and from work, could be considered to have brought the employee into contact with the third person via the vehicular collision, and could face potential liability for negligent hiring and retention as to injuries occurring from such a collision.

*Hare v. Cole,* 25 S.W.3d 617, 621–22 (Mo. App.2000). The Missouri court's analysis observes that the "employer must have played a role in bringing the offending employee into contact with the party who is thereby injured." *Id.* at 621. We agree, and we make the further observation that this is properly part of the scope-of-the-employer's-duty analysis—however it might also play into a causation analysis—because the duty

---

7. The pipe rack was for hauling pipe from construction trailers to job sites. The pipe rack was not installed until at least eight months after Weese was hired.

8. As we suggested in *Connes,* 831 P.2d at 1323, when driving is part of the job duties, the employer has a greater responsibility in making the hiring decision than simply asking the employee whether she or he possesses a valid driver's license. Nevertheless, the fact that an applicant has had one or more moving violations does not necessarily mean that she or he has a dangerous propensity for causing accidents. Had Performance Plumbing inquired into Weese's driving record instead of accepting his lie on its face, it would have discovered his fault in causing two accidents. Thus, the existence of his dangerous propensity could have been a jury question, if the Raleighs had come into contact with Weese through his employment.

of reasonable care in hiring the employee appropriately focuses on the job duties for which the employee is being hired in relation to persons the employer would reasonably foresee the employee coming into contact with through the employment.

In *Keller*, we refused to extend liability to the employer for the employee's sexual assault of a young girl at the employer's place of business while it was closed. The employer's duty and liability for undue risk of harm posed by hiring the employee must be related to "those with whom the employee came in contact in executing his employment responsibilities." 111 P.3d at 448.

In considering whether the employer in hiring the employee owed a legal duty to persons in plaintiff's circumstances, *Connes* states we should consider the social utility of defendant's business, the burden of imposing liability on the employer, and whether the employment would bring the employee into frequent or only infrequent contact with members of the public. 831 P.2d at 1320–21. Performance Plumbing's business has the social utility of providing residents of new houses with adequate plumbing. Plumbers hired to work at the company's job sites were not expected to have frequent contact with members of the public at those sites, but the employer could have reasonably foreseen they would have contact with members of the driving public on the job driving in route from construction trailers to job sites and back to construction trailers.

■ Weese caused the accident when he was commuting from his job on his way home from work. We recognize that the Raleighs suffered serious injuries for which Weese bears responsibility. But, we conclude as a matter of law that the Raleighs are not among the members of the public to whom Performance Plumbing owed a legal duty. They did not come into contact with Weese through his employment.

The trial court should not have submitted the Raleighs' negligent hiring claim to the jury and, having done so, it should have granted judgment for Performance Plumbing notwithstanding the verdict.

## D.
### The Raleighs' Respondeat Superior Negligence Claim

■ Well-established in Colorado law, the doctrine of respondeat superior is based on the theory that the employee acts on behalf of the employer when the employee is within the scope of his or her employment. In such circumstances, the employer is vicariously liable for the employee's negligent acts. *Grease Monkey Int'l, Inc. v. Montoya*, 904 P.2d 468, 473 (Colo.1995).

■ Under the theory of respondeat superior, the question of whether an employee is acting within the scope of the employment is a question of fact, and we must accept the fact-finder's determinations of fact. *N.J. Fid. & Plate Glass Ins. Co. v. Patterson*, 86 Colo. 580, 586, 284 P. 334, 336 (1930). The trier of fact resolves conflicting evidence; we cannot exercise that function. *Aspen Times Pub. Co. v. Russell*, 18 Colo. 75, 77, 31 P. 503, 504 (1892). In the present case, we decline to disturb the jury's special verdict factual finding that Weese was not acting within the scope of his employment when he caused the accident. Because that finding is based on sufficient evidence in the record, we uphold the court of appeals' judgment for dismissal of the Raleighs' respondeat superior claim against Performance Plumbing.

## III.

Accordingly, we affirm the judgment of the court of appeals dismissing the respondeat superior claim, and, on different grounds, the negligent hiring claim against Performance Plumbing.

MULLARKEY, C.J., concurs in part and dissents in part.

Chief Justice MULLARKEY, concurring in part and dissenting in part.

I concur in the majority opinion upholding the jury verdict on *respondeat superior*, and I respectfully dissent from the majority opinion overturning the jury verdict on negligent hiring.

I agree with the majority that, in general, an employer is not liable under the tort of

negligent hiring for an accident caused by its employee while commuting to or from work in the employee's vehicle. I also agree that liability in a particular case depends on the application of the principles set forth in *Connes v. Molalla Transport Sys., Inc.,* 831 P.2d 1316 (Colo.1992), and related cases. I dissent because the majority applies the wrong analysis and reaches the wrong result in this case. Causation, not duty, is the applicable principle in this case. Properly analyzed, the commuting accident before us is an exception to the general rule, and the jury's verdict on negligent hiring should be sustained.

In most cases, the means by which an employer commutes, how he or she arrives at or leaves the workplace, are immaterial to the employer. The employer does not control the employee's means of travel and does not benefit if the employee uses a particular means of travel.

However, there are exceptions to the general notion that an employer is not liable for accidents occurring during an employee's daily commute. If there is evidence that the employer has negligently hired an employee who is an unsafe driver and the employer controls or benefits from the employee's commuting by driving, then the case should be submitted to the finder of fact to determine whether the employer's negligence in hiring the employee caused injuries to a third party. There is evidence in the record now before us that Performance benefited financially from Weese's daily use of his truck for commuting. Performance outfitted Weese's truck to its specifications, and required him to drive that truck to work so that he could use it to transport pipe on the job. Given the evidence that Performance (1) knew Weese was an unsafe driver, and (2) intended Weese to commute in his truck and also benefited from his commuting by truck, the causation issue was properly submitted to the jury. I would uphold the jury verdict finding the employee, Cory Weese, 70 percent liable and the employer, Performance Plumbing, 30 percent liable for the damages suffered by the Raleighs.

When an employer hires an employee, and places the employee in a position that poses a risk of harm to others, it is incumbent upon the employer to conduct an inquiry into the employee's background to determine the employee's fitness for the duties involved. *See Restatement (Second) of Agency* § 213 cmt. d (1958) ("The principal may be negligent because he has reason to know that the servant or other agent, because of his qualities, is likely to harm others *in view of the work* or instrumentalities entrusted to him.") (emphasis added).

As the majority acknowledges, Performance hired Weese to be an apprentice plumber, and his duties required a substantial amount of driving every day between construction trailers and various work sites. Maj. op. at 1013. Although Performance owed a duty to the motoring public to ensure that Weese was a safe driver, it did not do so. The majority discusses Weese's poor driving record and notes that, when he was hired, Weese did not have a valid driver's license and did not have the statutorily required liability insurance for his truck. Maj. op. at 1014 n. 3. Performance's foreman testified that he knew about Weese's driving history and his lack of a valid license and insurance when Weese was hired. Under the jury instructions, the foreman's knowledge was attributable to the company. Thus, Performance acted not merely negligently, but with actual knowledge when it hired an unsafe driver for a position requiring substantial driving.

The fact that Weese commuted to work in his truck directly benefited Performance because it equipped the truck for use on Performance's job sites. Moreover, Performance knew at the time it hired Weese that he was likely to drive a company-equipped truck. The owner of Performance testified that his company routinely installed pipe racks on vehicles belonging to workers who proved to be reliable. According to his testimony, a reliable employee was one who came to work every day with the specially outfitted truck. It appears the company's main concern with employee reliability was that the employee not abscond with its equipment.

On cross examination, the owner admitted that Weese's truck was equipped identically to the company vehicles issued to foremen

and supervisors. The evidence showed that, at the time of the accident, there were two company owned trucks at Weese's job site, and neither was available to him. One was assigned to the foreman and one was assigned to a higher level supervisor.

The majority asserts that Performance's contention, that travel to and from work was "[not] part of the work day," was sufficient in and of itself to exclude the possibility that affixing the pipe rack onto Weese's truck converted this travel to a benefit for the employer. Maj. op. at 1013. The majority's reasoning is not consistent with the record and I do not find it persuasive.

Weese was hired by Performance as an apprentice plumber, having had no prior experience as a plumber. The pipe rack installed on his truck by Performance is a specialized piece of equipment designed for safely transporting pipe from one place to another. Other than using the rack while working for Performance, the equipment had no apparent value for Weese.

By contrast, Weese's truck, as modified, had considerable value for Performance. Use of Weese's truck enabled the company to avoid the expense of buying or leasing and insuring a suitably equipped company vehicle for use by its employee.

Certainly, a jury could conclude from the evidence that there was a financial benefit to Performance if Weese commuted in his truck. In the workers' compensation context, similar facts would bring the worker within the coverage of the act for injuries incurred during the worker's commute. *See Electric Mut. Liab. Ins. Co. v. Indus. Comm'n,* 154 Colo. 491, 495, 391 P.2d 677, 679 (1964) (holding in workers' compensation case that when employee uses his own car to perform services for his employer, employee remains in the course of his employment until he returns home).

The majority views this issue as a question of duty for the court to decide rather than a question of causation for the jury to decide. In my opinion, the majority's analysis is focused on the wrong element of the tort of negligent hiring.

Application of the majority's duty analysis results in a curious anomaly. Performance owes a duty of care to the motoring public (which presumably would include the Raleighs) to hire employees who are safe drivers because the employees are expected to drive during the work day. If this accident had happened during Weese's shift, the majority would hold Performance liable to the Raleighs. But the majority concludes that Performance owed no duty to the Raleighs in this case because the accident occurred after work hours.

The majority's analysis creates a kind of "blinking light" of duty that is arbitrary in practice and not helpful to the future development of the law. It seems to me that the answer to this analytical confusion is to address the commuting issue as a question of causation.

The causation element in a tort action functions as a natural limitation of liability. As the Draft Restatement of the Law of Torts explains:

> There are two primary legal doctrines for limiting liability: duty and scope of liability [otherwise referred to as proximate cause].... Duty is a question of law for the court ... while scope of liability ... is treated as a question of fact for the factfinder. Hence, duty is a preferable means for · addressing limits on liability when those limitations are clear, are based on relatively bright lines, are of general application, do not usually require resort to disputed facts in a case, implicate policy concerns that apply to a class of cases that may not be fully appreciated by a jury deciding a specific case, and are employed in cases in which early resolution of liability is particularly desirable.... On the other hand, when the limits imposed require careful attention to the specific facts of a case, and difficult, often amorphous evaluative judgments for which modest differences in the factual circumstances may change the outcome, scope of liability [or proximate cause] is a more flexible and preferable device for placing limits on liability.

*Restatement (Third) of Torts* § 29 cmt. f (Proposed Final Draft No. 1, 2005).

Causation is the element that limits liability generally because "[t]ort law does not impose liability on an actor for all harm factually caused by the actor's tortious conduct." *Id.* § 29 cmt. d. As explained in the draft Restatement of Torts, "[a]n actor's liability is limited to those physical harms that result from the risks that made the actor's conduct tortious." *Id.* In order to limit the liability of an actor, or in this case, an employer, the Restatement observes that

> an actor should be held liable only for harm that was among the potential harms—the risks—that made the actor's conduct tortious. The term 'scope of liability' is employed to distinguish those harms that fall within this standard and, thus, for which the defendant is subject to liability, and on the other hand, those harms for which the defendant is not liable.

*Id.* Applying this rule requires consideration of both "the risks that made the actor's conduct tortious," and "whether the harm for which recovery is sought was a result of any of those risks." *Id.* Whether having an employee commute to work in a specially equipped vehicle each day is "among the potential harms—the risks" that make Performance's failure to verify Weese's driving record a cause of the Raleighs' injuries, is a question best left to the jury.

The majority cites only one case, *Hare v. Cole,* 25 S.W.3d 617 (Mo.App.2000), involving an employer's liability for an employee's commuting accident. Maj. op. at 1018. *Hare* does not support the majority's decision to rely upon an analysis of duty; rather, that case turned on an analysis of causation. The *Hare* court rejected the employer's suggestion that it find employers have no duty as a matter of law "to check the license status or driving record of applicants for driving positions." 25 S.W.3d at 621. I view *Hare* as consistent with my understanding that causation, not duty, is the way to analyze and impose appropriate limitations on an employer's liability for its employee's acts in an off-duty driving case.

A similar causation analysis was employed by a federal court applying Texas law in a negligent hiring case where an employee-driver rear-ended a pick-up, killing the driver and severely injuring the passenger. *McDorman ex rel Connelly v. Texas–Cola Leasing Co.,* 288 F.Supp.2d 796 (N.D.Tex. 2003). The court held that, while the employer owed the plaintiffs a duty, the employer's hiring of the driver was not the proximate cause of the plaintiffs' injuries because "it was not foreseeable that someone with [the driver's] background would be involved in this accident." *Id.* at 805. The driver's motor vehicle record revealed that he had a suspended license for failure to pay child support, and a seat belt violation. In the court's opinion, the driver's citations "were not of the type that a reasonable mind could have anticipated the harm that occurred, a traffic accident." *Id.* at 806. I note that in the present case, the majority agrees that Weese's driving record showed he was an unsafe driver.

I am concerned that the majority's reliance on duty will have the effect of foreclosing employer liability in all off-duty commuting cases even though the majority does not intend that result. The Georgia appellate court took a similar duty approach limiting employer liability for off-duty driving accidents. The result has been that, in Georgia, an employer is not liable to a third party injured by an employee in an off-duty accident even if the employee is driving a vehicle furnished by the employer. In Georgia, the tortious act must occur "during the tortfeasor's working hours." *Lear Siegler, Inc. v. Stegall,* 184 Ga.App. 27, 360 S.E.2d 619, 620 (1987); *see also TGM Ashley Lakes, Inc. v. Jennings,* 264 Ga.App. 456, 590 S.E.2d 807, 815 (2003) ("an employee's regular commute is not considered to be under color of employment, and therefore, the cause of action [for negligent hiring] does not extend to torts committed on members of the public during an employee's commute."). The employer in *Lear Siegler* was found to owe no duty to the driving public even though the record revealed that the employee's duties included driving, the employee had a prior conviction for driving under the influence of alcohol, and the employee caused a traffic accident during his early morning commute in the employer-provided vehicle while intoxicated.

Surely that is not an approach that the majority would condone.

Like the majority, I have no wish to extend negligent hiring liability to all employers for all employees who cause accidents when commuting between work and home. Maj. op. at 1018. Under my approach, only an employer who, as a direct result of the hiring, places an employee in a position to inflict harm on third parties will be liable. A jury is competent to weigh the evidence and determine whether the employer's negligence caused injury to a third party.

Accordingly, I respectfully dissent. I would reverse the court of appeals and reinstate the jury's verdict holding Performance liable to the Raleighs.