2012 COA 208

**Gail COLLARD, Plaintiff–Appellant,**

v.

**VISTA PAVING CORPORATION, Defendant–Appellee.**

**No. 12CA0153.**

Colorado Court of Appeals, Div. I.

Nov. 21, 2012.

---

Killian Davis Richter & Mayle, P.C., J. Keith Killian, Damon J. Davis, Grand Junction, Colorado, for Plaintiff–Appellant.

Murphy Decker Hensen & Cook–Olson, P.C., Daniel P. Murphy, C. Todd Drake, Eric M. Kirby, Littleton, Colorado, for Defendant–Appellee.

Opinion by Judge LOEB.

¶ 1 In this personal injury action involving a road construction project, plaintiff, Gail Collard, appeals the summary judgment entered in favor of defendant, Vista Paving Corporation (Vista). Specifically, she contends the district court erred in ruling that Vista did not owe her a duty of care under either the Premises Liability Act or under common law negligence. Collard also appeals the district court's order awarding costs to Vista. We affirm the summary judgment in part and reverse it in part, vacate the award of costs, and remand for further proceedings.

¶ 2 With respect to Collard's common law negligence claim, we conclude, as a matter of first impression, that when a road contractor such as Vista completes its contracted work

and then leaves the site in a dangerous condition as a result of its work, the contractor has a tort duty to third parties for a reasonable period of time either to eliminate the condition or to warn foreseeable users of the dangers that could foreseeably result in injuries, even if its work has been accepted by the owner or other contracting party. However, we also conclude that no such duty exists if the contractor had a good-faith reasonable belief that, after the contractor completed its work, another party, authorized to do so, would promptly take the necessary measures to eliminate the danger or provide adequate warnings to foreseeable users of the road.

## I. Background and Procedural History

¶ 3 In 2007, the City of Grand Junction (the City) initiated a large sidewalk improvement construction project. As pertinent here, Vista was hired by the City to construct two road medians on Wellington Avenue according to plans, designs, and specifications developed and provided by the City. The two medians were to be built in the center of the road, approximately eight inches high and eleven feet wide.

¶ 4 Undisputed evidence submitted by the parties in connection with Vista's summary judgment motion showed that Vista commenced its work on the Wellington medians on or around July 9, 2007. While it was constructing the medians, Vista was responsible for traffic control pursuant to its contract with the City. Gabriel Gutierrez, one of Vista's owners, was the certified work site

traffic supervisor and developed Vista's traffic control plan, which included signage and placement of safety cones at the work site. On July 19, 2007, Vista completed its construction of the Wellington medians. On that date, Pat McGarry, the City's project inspector for the Wellington medians, conducted his final inspection of Vista's work. After his inspection, he told Vista that its median work had been completed and that Vista was authorized to leave the site. Vista requested permission to remove the traffic control devices "because they were going to be in the way," and it "had to pick them up one way or another." McGarry agreed [1] and Vista did so. At that time, the yellow dividing line in the center of Wellington Avenue continued straight into the medians.

¶ 5 In his deposition, McGarry also testified that after his inspection of the medians, he notified the City's traffic control division, that Vista's construction was complete and that it could "come in at any time and do their striping [and] do the delineations that they were going to put at the end of the island" to ensure the site was safe for motorists. There appears to be no direct evidence in the record, however, that McGarry told Vista of this conversation or that he told Vista when the City would install safety signage at the medians and readjust the striping of the lane on Wellington Avenue.[2] In his affidavit submitted in support of Vista's summary judgment motion, McGarry stated, "Upon completion of its work on the Wellington Medians, Vista was no longer responsible for traffic control at the [medians]." Similarly, in his affidavit, Justin Vensel, the City's

---

1. While there is some dispute in the record whether McGarry communicated this information to Gutierrez or his co-owner, there is no dispute that McGarry spoke to someone from Vista and gave Vista permission to remove its safety cones and signs from the site.

2. Gutierrez's deposition contains the following testimony:

Q. [W]hen you left the scene on [July 19] . . . did the city replace the cones with any other cones?

A. I have no control over what the city does, so I have no idea.

. . . .

Q. Did you ask Mr. McGarry if you could leave cones there to protect motorists from hitting the island?

A. No, I asked him if we could pack everything up.

. . . .

Q. Did you have any discussions with Mr. McGarry as to when there might be any additional signs or lighting added to that area?

A. I don't consider that my job.

. . . .

Q. Okay. So I didn't get an answer to that. Did he discuss it or not?

A. No.

Similarly, McGarry testified as follows:

Q. If Vista Paving had asked if it could leave up cones or some other warning lights until there was some permanent marking in place, would you have opposed that?

A. No.

project manager for the medians, stated, "Vista had no control over or responsibility for the [medians] or the traffic control for this location after July 19, 2007. Additionally, Vista was not responsible for installing pedestrian light poles, flashers, reflectors, or other warnings at the [medians]."

¶ 6 For at least five days after Vista's completion of the median construction, the City did not put any traffic control devices in place at the medians, nor did it repaint the yellow dividing line in the center of Wellington Avenue. Thus, as noted, the line continued straight down the center of the road and into the center of one of the new medians. The City began the next phase of its work on the medians after Vista left, and City work logs reflect that on July 23 it "cleaned up the jobsite at the [medians]."

¶ 7 Around 3:30 a.m. on July 24, 2007, a truck collided with the newly constructed median, flattening two tires and damaging its tire rims. The record contains disputed evidence regarding whether security personnel from a nearby hospital placed green traffic cones in the road near the median after this accident.

¶ 8 At approximately 5:30 a.m. that morning, Collard was driving on Wellington Avenue and collided with the medians, totaling her vehicle and suffering injuries. The accident report stated that Collard had limited visibility due to condensation on the interior of her car windows and that she never saw the medians or any traffic cones allegedly placed near the medians by the hospital security personnel. Collard was cited for careless driving.

¶ 9 After Collard's accident, the City repainted the center line on Wellington to direct traffic around the new medians, installed two white poles with reflective tape at the front of the medians, and installed a flashing walk light for pedestrians. There is no evidence in the record that the City ever asked Vista to return to the medians to perform any additional work.

¶ 10 Collard brought this action, alleging claims against the City and Vista under Colorado's Premises Liability Act, § 13–21–115, C.R.S.2012 (the PLA), and common law negligence. She asserted that Vista breached its duty to her when it created a hazardous condition by building the medians and leaving the construction site in a dangerous condition without safety signage; and that the City breached its duty to properly maintain, supervise, and care for the construction and condition of its streets. The City was dismissed from the suit based on immunity under Colorado's Governmental Immunity Act, §§ 24–10–101 to –120, C.R.S.2012.

¶ 11 After substantial discovery by both parties, Vista filed a motion for summary judgment, arguing (1) that, as a matter of law, it was not a landowner and, thus, could not be liable under the PLA; and (2) that it owed no common law tort duties to Collard and, thus, could not be liable for negligence.

¶ 12 After full briefing, the district court granted Vista's motion for summary judgment, finding no material issues of fact warranting a trial on Collard's claims under the PLA or under common law negligence. With respect to the PLA claim, the court concluded that Vista was not a landowner under the PLA because (1) it had surrendered control of the medians to the City on July 19, 2007, (2) nothing in the contract provided that Vista would maintain control over the medians after completion of its work, and (3) Collard had presented no evidence to the contrary.

¶ 13 With respect to Collard's common law negligence claim, the court ruled that Vista owed Collard no duty after it completed its work on the medians and relinquished control of the site to the City. The court determined that there were no disputed material issues of fact that the City had accepted Vista's work and that the City had reassumed control of the work site on July 19. The court ruled that Vista had no legal duty to maintain safety devices or traffic control signage at the medians after its work was completed and accepted by the City. The court also ruled that there was no material issue of fact as to whether Vista had created a hazardous condition when it constructed the medians, reasoning that, because the City, not Vista, designed the project, there was no possible claim against Vista for negligent design of the medians.

¶ 14 Collard subsequently sought reconsideration of the order granting summary judgment on the negligence claim, which, in effect, was a C.R.C.P. 59 motion for a new trial. The district court denied that motion in a subsequent written order.

¶ 15 This appeal followed.

## II. Standard of Review

¶ 16 We review the grant of summary judgment de novo. *Georg v. Metro Fixtures Contractors, Inc.,* 178 P.3d 1209, 1212 (Colo. 2008). Summary judgment is appropriate only if the pleadings and supporting documentation demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *W. Elk Ranch, L.L.C. v. United States,* 65 P.3d 479, 481 (Colo.2002). In determining whether summary judgment is proper, we give the nonmoving party the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts, and all doubts must be resolved against the moving party. *Brodeur v. Am. Home Assurance Co.,* 169 P.3d 139, 146 (Colo.2007).

¶ 17 The moving party has the initial burden to show that there is no genuine issue of material fact. *Greenwood Trust Co. v. Conley,* 938 P.2d 1141, 1149 (Colo.1997). When a party moves for summary judgment on an issue upon which the party would not bear the burden of persuasion at trial, the moving party's initial burden of production may be satisfied by showing an absence of evidence in the record to support the nonmoving party's case. *Casey v. Christie Lodge Owners Ass'n,* 923 P.2d 365, 366 (Colo.App.1996). "[O]nce the moving party has met its initial burden of production, the burden shifts to the nonmoving party to establish that there is a triable issue of fact." *Greenwood,* 938 P.2d at 1149. Failure to meet that burden will result in summary judgment in favor of the moving party. *Casey,* 923 P.2d at 366.

¶ 18 When the record is not adequate to permit a conclusion that no material fact dispute exists, the entry of summary judgment is inappropriate. *Kral v. Am. Hardware Mut. Ins. Co.,* 784 P.2d 759, 766 (Colo. 1989).

## III. Premises Liability Act

¶ 19 We first address Collard's contention that the district court erred by granting summary judgment for Vista on the basis that Vista was not a landowner under the PLA. The court held that Collard "failed to raise any genuine issues of fact as to Vista's status as a landowner" based on the evidence that Vista had been authorized by the City to leave the work site and remove its traffic control signage and devices. We perceive no error in the court's entry of summary judgment on the PLA claim.

### A. Timeliness of Appeal

¶ 20 Initially, we address and reject Vista's argument that Collard's appeal of the summary judgment on her PLA claim is not timely. Vista argues that, because the district court's summary judgment order was entered more than forty-nine days before Collard filed her notice of appeal, and Collard did not raise the PLA portion of the order in her motion for reconsideration, her appeal on the PLA claim is untimely. *See* C.A.R. 4(a)(4) (while a notice of appeal must be filed within forty-nine days of the final judgment, if a party files a motion under C.R.C.P. 59, "the running of the time for filing a notice of appeal is terminated" and commences to run anew from the date of the denial of the C.R.C.P. 59 motion). Vista argues that, because Collard did not raise the PLA claim in her motion for reconsideration, the time for filing an appeal as to that aspect of the court's summary judgment order was not reset by the subsequent order denying the motion for reconsideration. We disagree.

¶ 21 Pursuant to C.R.C.P. 59(k) and C.A.R. 4(a), the time for filing a notice of appeal commences when judgment is final. *See Grand Cnty. Custom Homebuilding, LLC v. Bell,* 148 P.3d 398, 400 (Colo.App. 2006) ("A judgment is final and therefore appealable if it disposes of the entire litigation on its merits, leaving nothing for the court to do but execute on the judgment."). Here, the final judgment on Vista's motion for summary judgment included *all* of the issues raised by Collard, including the PLA

issue. The district court did not issue or certify a separate final judgment for the PLA claim. *See* C.R.C.P. 54(b). Hence, Collard's motion for reconsideration tolled the time for filing an appeal for the entire judgment, not only for the common law negligence issues she raised in her motion. Accordingly, the court's order denying the motion for reconsideration commenced the running of the time for filing a notice of appeal on the entire judgment, and Collard's notice was timely from that date. Because her notice of appeal was timely under C.A.R. 4(a)(4), we address on its merits Collard's contention that Vista qualifies as a landowner under the PLA.

### B. Vista's Status as a Landowner Under the PLA

¶ 22 Whether Vista qualifies as a landowner under the PLA is a threshold question in our review, as it determines whether section 13–21–115(2), C.R.S.2012, or the common law defines Vista's duty to third parties such as Collard. "The overriding purpose of the premises liability statute is to clarify and to narrow private landowners' liability" in comparison to "[g]eneral negligence law." *Pierson v. Black Canyon Aggregates, Inc.*, 48 P.3d 1215, 1219 (Colo.2002). To determine whether the statute or common law principles govern in this case, we must consider whether the record shows that Vista qualified as a landowner for the purposes of the PLA.

¶ 23 On appeal, Collard contends (as she did in the district court) that, regardless of whether Vista occupied or controlled the land, Vista was a landowner under the PLA because it was legally responsible for a dangerous condition it created on the site. We disagree.

¶ 24 To qualify as a "landowner" under the PLA one must, at the time of the accident, be (1) an authorized agent or a person in possession of real property, or (2) a person legally responsible for the condition of real property or for the activities conducted on real property. *See Land–Wells v. Rain Way Sprinkler and Landscape, LLC*, 187 P.3d 1152, 1154 (Colo.App.2008) (citing

§ 13–21–115(1), C.R.S.2012); *Nordin v. Madden*, 148 P.3d 218, 221–22 (Colo.App. 2006) (holding that a landlord who occasionally repaired a defective hot water heater was not a landowner legally "responsible" for the condition of the property at the time of the plaintiff's injury); *see also Pierson*, 48 P.3d at 1221 (an entity is legally "responsible" under the PLA if it is "legally entitled to be on the real property and ... is responsible for creating a condition on real property or conducting an activity on real property").

¶ 25 Although Vista may have indeed legally "created a condition" on the premises by removing its safety signage, this did not necessarily qualify it is as a landowner for the purposes of the PLA. Rather, as the undisputed evidence in the record shows, the City had fully reassumed responsibility for the conditions and activities at the site, as well as physical control of the medians at the time of the accident; accordingly, Vista no longer qualified as a landowner under the Act. *Land–Wells*, 187 P.3d at 1154; *Nordin*, 148 P.3d at 221–22.

¶ 26 Consequently, we affirm the district court's grant of summary judgment in favor of Vista based on the conclusion that Vista is not liable to Collard as a landowner under the PLA.

### IV. Common Law Tort Duty of a Contractor After Completion of Work

¶ 27 Collard's primary contention on appeal is that the district court erred by ruling, as a matter of law, that Vista did not owe her a duty of care under her common law negligence claim. Specifically, Collard contends that Vista had a common law duty to leave the site in a safe condition for subsequent users, and not to create a hazardous condition at the site. She asserts that Vista breached these duties when it removed its safety signage and construction cones from the site before the City put its own warnings in place, and that the district court erred when it granted summary judgment in Vista's favor on this issue.[3] We conclude that

---

3. On appeal, Collard does not raise as a separate

contention that the court erred in denying her

the district court erred in granting summary judgment for Vista on the common law negligence claim.

¶ 28 Whether a defendant owes a plaintiff a legal duty of care is a question of law, which we review de novo. *HealthONE v. Rodriguez,* 50 P.3d 879, 888 (Colo.2002).

¶ 29 To establish a claim of negligence, a plaintiff must show that the defendant owed him or her a legal duty of care, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injury. *Ryder v. Mitchell,* 54 P.3d 885, 889 (Colo.2002). If a negligence action is based on facts that do not impose a duty of care upon a defendant for a plaintiff's benefit, the claim will fail. *Id.*

¶ 30 A court's determination regarding the existence of a legal duty is an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is or is not entitled to protection. *Id.* at 889–90 (citing *Univ. of Denver v. Whitlock,* 744 P.2d 54, 57 (Colo.1987)). The court should base this determination on several factors, including:

- the risk involved in the actor's conduct,
- the foreseeability and likelihood of injury from the hazard, as weighed against the social utility of the defendant's conduct;
- the magnitude of the burden of guarding against injury or harm; and
- the consequences of placing the burden of a duty on the defendant.

*Ryder,* 54 P.3d at 890; *see also Trailside Townhome Ass'n. v. Acierno,* 880 P.2d 1197, 1203 (Colo.1994) (citing *Whitlock,* 744 P.2d at 57); *Swieckowski v. City of Fort Collins,* 923 P.2d 208, 211–12 (Colo.App.1995), *aff'd,* 934 P.2d 1380 (Colo.1997). "Colorado law recognizes that these factors are not exclusive and allows a court to consider any other relevant factors founded on the competing individual and social interests implicated by the particular facts of the case at issue." *Ryder,* 54 P.3d at 890.

¶ 31 Ultimately, whether a duty exists in a particular situation is based on "fairness under contemporary standards— that is, would reasonable persons recognize and agree that a duty of care exists." *Id.*

### A. The District Court's Order

¶ 32 In its order, the district court concluded,

It is unreasonable to impose a legal duty upon Vista to maintain the safety of the medians when it was no longer working on the medians and had given control over the medians to the City. In addition, the fact that other entities were finishing the construction of the medians at the time of the accident also weighs against imposing a legal duty upon Vista.

¶ 33 In reaching its conclusion of no duty, the court relied on the contract between Vista and the City, which contained no express provisions obligating Vista to maintain safety signage at the medians after its work was complete, and uncontroverted evidence that the City had released Vista from being in control of and responsible for safety at the site, including statements from the project manager (Vensel), the project inspector (McGarry), and Vista's safety coordinator (Gutierrez), which indicated that the City unequivocally had released Vista from any responsibility for traffic control at the medians after July 19, 2007.

¶ 34 The district court held that Vista owed Collard no duty once the City released it from the work site, relying on *Pioneer Construction Co. v. Richardson,* 176 Colo. 254, 255, 490 P.2d 71, 74–75 (1971) (a contractor working on road construction or repair has a duty to keep the road in a reasonably safe condition for third persons while he "is actively engaged" with the project). The court extrapolated from *Pioneer* that a contractor has no duty once its work is done. The court also relied on language from *Lindauer v. LDB Drainlaying, Inc.,* 38 Colo. App. 266, 269, 555 P.2d 197, 199 (1976) ("af-

motion for reconsideration. Rather, she merges the arguments she made in opposition to summary judgment with the arguments she made in the motion for reconsideration. We conclude

that all of her arguments on appeal were properly preserved in the record, and it is not necessary for us to separately address the district court's denial of her motion for reconsideration.

ter the owner accepts the work, it is the owner's and not the contractor's responsibility for maintaining and using the property in its defective condition").[4]

¶ 35 On the whole, the district court held that summary judgment was warranted here because Collard presented no evidence to counter the evidence presented by Vista that "Vista relinquished control over the medians to the City once it finished its work" and, therefore, "[f]rom that point forward, the City, and not Vista, was responsible for maintaining all traffic control and safety devices and signs for the medians."

### B. Analysis

¶ 36 We must determine whether the district court applied the correct legal standard in ruling that there was no common law duty here, given the circumstances of the case and the state of the law in Colorado. In our view, the court's reasoning reflects an application of a common law doctrine known as the "completed and accepted" rule. Thus, we necessarily must address whether Colorado has adopted the completed and accepted rule or some other approach to the duty issue. As more fully discussed below, the courts essentially employ two basic rules regarding the tort liability of a building or construction contractor for injury to a third person occurring after completion of the work and its acceptance by the owner or contractee—the completed and accepted rule and the more modern "foreseeability rule." *See McFadden v. Ten–T Corp.*, 529 So.2d 192, 194 (Ala.1988); *Suneson v. Holloway Constr. Co.*, 337 Ark. 571, 992 S.W.2d 79, 80–83 (1999).

¶ 37 Our analysis of the duty issue here proceeds as follows. First, we describe and consider the contours of and rationale for the completed and accepted rule and the foreseeability rule. Second, we address Colorado case law on this topic, and conclude that no Colorado appellate decision has expressly

adopted the completed and accepted rule under the circumstances of this case. To the contrary, some Colorado cases have rejected that rule in favor of the foreseeability rule, but in the context of facts different from those in this case. Third, based on an analysis of the pertinent policy considerations and the apparent trend of the law in both Colorado and other states, we articulate, as a matter of first impression, the appropriate legal test for determining the existence of Vista's common law duty here. And, finally, applying this test, we conclude that the district court erred in granting summary judgment for Vista because it applied the wrong legal standard on the common law duty issue.

### 1. The Completed and Accepted Rule and the Foreseeability Rule

¶ 38 Under the completed and accepted rule, an independent contractor generally owes no duty of care to third parties with respect to the work it has performed, once that work has been completed by the contractor and accepted by the property owner or general contractor. *See Kostidis v. General Cinema Corp.*, 754 N.E.2d 563, 568 (Ind.Ct.App.2001); Restatement (Second) of Torts § 384 cmt. g (1965). Once the contractor's work is accepted, the general contractor or owner becomes answerable for any damages or injuries resulting from the defective or dangerous condition of the work. *Bragg v. Oxford Constr. Co.*, 289 Ga.App. 638, 658 S.E.2d 198, 200–01 (2008), *aff'd*, 285 Ga. 98, 674 S.E.2d 268 (2009); *Ogles v. E.A. Mann & Co.*, 277 Ga.App. 22, 625 S.E.2d 425, 428 (2005). Some jurisdictions recognize exceptions to the rule, holding that contractors may be still be held liable to third parties where the accepted work was left in a condition that was "imminently dangerous," had hidden or latent defects that the owner could not discover, or was certain to endanger third persons. *See Bush v. SECO Elec. Co.*, 118 F.3d 519, 521 (7th Cir.1997) (applying

---

4. The trial court further reasoned that, based on Collard's assertion that Vista had breached its duty by creating a hazardous condition when it constructed the medians, she was essentially arguing that the design of the medians was defective. The court held that the contract showed that the City, and not Vista, was responsible for the median design, and, therefore, Vista owed Collard no duty in regard to the design of the medians. On appeal, Collard appears to have abandoned any contention of negligent construction by Vista, and, accordingly, we decline to review any aspect of the district court's order on this issue.

Indiana law); *Foreline Sec. Corp. v. Scott,* 871 So.2d 906, 910 (Fla.Dist.Ct.App.2004); *Becker v. Kreilein,* 754 N.E.2d 939, 947 (Ind. Ct.App.2001), *aff'd in part and rev'd in part,* 770 N.E.2d 315 (Ind.2002).

¶ 39 Historically, courts in jurisdictions adopting the completed and accepted rule typically have done so for three reasons:

- There was a lack of privity between the contractor and the injured third person, and the court did not want to impose a duty where none was presumed by the parties.

- The contractor had no legal control over the work once the owner resumed possession of the site or project.

- The court presumed that the owner knew of any patent defects and thereby took responsibility for them upon acceptance of the work.

*See Minton v. Krish,* 34 Conn.App. 361, 642 A.2d 18, 20 (1994) (rejecting the completed and accepted rule in Connecticut, but discussing at length the policy and legal reasons in support of the rule).

¶ 40 While "[a]s late as the 1950s, the majority of jurisdictions adhered to the 'completed and accepted' rule," it has since been repudiated in most states. Emmanuel S. Tipon, Annotation, *Modern Status of Rules Regarding Tort Liability of Building or Construction Contractor for Injury or Damage to Third Person After Completion and Acceptance of Work; "Completed and Accepted" Rule,* 74 A.L.R.5th 523, § 2[a] (1999). The recent trend among United States jurisdictions has been to abandon the competed and accepted rule entirely in favor of the foreseeability rule. *Id.* Thus, the foreseeability rule now appears to be the majority rule. *See Seitz v. Zac Smith & Co.,* 500 So.2d 706, 711 (Fla.Dist.Ct.App.1987) (while the completed and accepted rule is the minority rule, and "severely criticized by some," it was still the law in Florida).

¶ 41 In contrast to the completed and accepted rule, the more modern foreseeability rule provides that a construction contractor is liable for injury or damage to a third person

as a result of the condition of [its] work, even after completion of the work and its acceptance by the owner *where it was reasonably foreseeable that third persons would be injured by such work due to the contractor's negligence or failure to disclose a dangerous condition known to such contractor.*

Tipon, at § 2[a] (emphasis added); *see also* Restatement (Second) of Torts, § 384 cmt. e (1965).

¶ 42 As stated in an authoritative treatise, in the context of building contractors:

It is now the almost universal rule that the contractor is liable to all those who may foreseeably be injured by the structure, not only when he fails to disclose dangerous conditions known to him, but when the work is negligently done. This applies not only to contractors doing original work, but also to those who make repairs, or install parts, as well as supervising architects and engineers.

W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 104A, at 723 (5th ed. 1984).

¶ 43 Jurisdictions that have adopted the foreseeability rule have done so based on a variety of rationales. For example, some courts hold that liability can exist for negligence without privity, and conclude that the completed and accepted rule is based on a privity-of-contract theory "that has become virtually extinct in American jurisprudence." *See Suneson,* 992 S.W.2d at 84. Other jurisdictions simply reason that the foreseeability rule is more consistent with modern principles of tort liability and places liability on the appropriate party. *See Pierce v. ALSC Architects, P.S.,* 270 Mont. 97, 890 P.2d 1254, 1263 (1995); Emmanuel S. Tipon, Annotation, *Modern Status of Rules Regarding Tort Liability of Building or Construction Contractor for Injury or Damage to Third Person Occurring After Completion and Acceptance of Work; "Foreseeability" or "Modern" Rule,* 75 A.L.R.5th 413, § 4 (2000).

¶ 44 A third rationale is that the modern foreseeability rule is considered a more straightforward approach to determining duty. For example, in *Suneson,* the Arkansas Supreme Court adopted the modern fore-

seeability rule after it determined that "the accepted-work rule has been thoroughly criticized as anachronistic and has provided unwarranted exceptions to general negligence principles. It has been said to have provided harsh results and many exceptions have been adopted to ameliorate such harshness." *Suneson,* 992 S.W.2d at 85. Texas and Wyoming have expressly rejected the completed and accepted rule and, instead, have adopted the foreseeability rule in part to avoid the plethora of complicated exceptions to the completed and accepted rule that equity requires. *See Strakos v. Gehring,* 360 S.W.2d 787, 791 (Tex.1962); *Lynch v. Norton Constr., Inc.,* 861 P.2d 1095, 1098–99 (Wyo. 1993) (the completed and accepted rule is more cumbersome than traditional negligence analysis and the exceptions nearly swallow the rule). Finally, the foreseeability rule is sometimes cited as providing better protections for public safety from negligent builders and contractors. *Johnson v. Equip. Specialists, Inc.,* 58 Ill.App.3d 133, 15 Ill.Dec. 491, 373 N.E.2d 837, 843 (1978).

### 2. Colorado Case Law on Contractor Duties

¶ 45 The parties have not cited, and we have not found, a Colorado appellate opinion that has explicitly adopted or rejected either the completed and accepted rule or the foreseeability rule in the context of determining the tort duty of a road contractor to third parties, where, as here, the claim is not one of negligent construction, but rather an alleged failure to leave the site in safe condition or provide adequate warnings after the contractor's work is completed. Nonetheless, based on our review of Colorado case law on the liability of contractors, as discussed below, we discern that, for many decades, Colorado jurisprudence in this area has been hewing a path more closely aligned with the foreseeability rule than with the completed and accepted rule. Indeed, existing case law establishes that a contractor's liability, after its work has been completed and accepted, is defined according to the foreseeability rule, at least in regard to construction, repair, installation, and performance pursuant to a construction contract.

¶ 46 The Colorado Supreme Court appears to have first addressed the question of the duty that a road construction contractor owes to third persons in *Lewis v. La Nier,* 84 Colo. 376, 270 P. 656 (1928). The defendants in *Lewis* were under contract with the state to construct a three-mile strip of highway. *Id.* at 378–79, 270 P. at 657. They failed to provide safety signs and lights warning motorists of the road construction during the construction project. *Id.* As a result, the plaintiff's husband was killed in an accident caused by the dangerous road conditions. *Id.* The supreme court held that road contractors are liable to third parties under negligence law, and not merely to those parties with whom the contractor has privity of contract. *Id.* at 383, 270 P. at 658–59. This holding was an early step away from grounding a contractor's duty in Colorado in contractual privity. Nonetheless, *Lewis* did not directly address the completed and accepted rule, because the contractor there was still actively working on the site at the time of the accident.

¶ 47 The supreme court has since reaffirmed the *Lewis* rule that a contractor has a duty to third persons while at work on a project in *Pioneer Construction,* 176 Colo. at 260, 490 P.2d at 74, and in *Bath Excavating & Construction Co. v. Wills,* 847 P.2d 1141 (Colo.1993) (contractor still actively excavating water pipes owed a duty of care to a third-party worker injured by the company's negligent performance).

¶ 48 The court appears to have first addressed a contractor's tort duty *after* work on the project has been completed in *Lembke Plumbing & Heating v. Hayutin,* 148 Colo. 334, 366 P.2d 673 (1961). In *Lembke,* the court held that a homeowner did not waive her right to assert a negligence claim against a plumber when she accepted the plumber's completed contractual work. *Id.* at 340–41, 366 P.2d at 677. With *Lembke,* the supreme court took another indirect step away from the completed and accepted rule; however, the court's holding was not a direct refutation of the rule, because that case involved a claim against a contractor *by his employer,* not by a third party. *See also Metro. Gas Repair Serv., Inc. v. Kulik,* 621 P.2d 313, 318

(Colo.1980) (repair service contract with a homeowner gave rise to an independent common law duty to the homeowner to perform work with reasonable care and skill).

¶ 49 A division of this court directly addressed the completed and accepted rule in *Wright v. Creative Corp.,* 30 Colo.App. 575, 498 P.2d 1179 (1972). The division held that where a contractor's "completed work is reasonably certain to endanger third persons if negligently constructed, a contractor or builder of real property is liable for injuries or death of third persons occurring *after the completion of the work and after its acceptance by the owner." Id.* at 580, 498 P.2d at 1181–82 (emphasis added). The ruling in *Wright* established contractor liability to third parties for negligent construction, installation, or repair, even after completion of the contract. This rule has since been consistently applied by Colorado courts. *See A.C. Excavating v. Yacht Club II Homeowners Ass'n.,* 114 P.3d 862, 870 (Colo.2005) ("subcontractors owe homeowners a duty of care, independent of any contractual obligations, to act without negligence in the construction of homes"); *Cosmopolitan Homes, Inc. v. Weller,* 663 P.2d 1041, 1045 (Colo. 1983) (builder or contractor is held to a standard of reasonable care to foreseeable future users of the property for defects in workmanship and construction); *Land–Wells,* 187 P.3d at 1153 (landscaper has a duty to consider existing drainage systems when installing landscaping in order to prevent negligent installation that might result in injury to third parties); *Swieckowski,* 923 P.2d at 212–13 (landowner had a duty to injured party, where landowner failed, inter alia, to warn of dangerous condition he had created by the design and construction of modifications to an abutting public road, even where the injury occurred after the landowner's work was completed and the landowner had no control of the road); *Johnson v. Graham,* 679 P.2d 1090, 1094 (Colo.App.1983) ("[a] building contractor is under a common law duty to exercise reasonable care and skill in the construction of the building," and "[a] negligence claim is not contingent upon privity of contract"), *rev'd in part sub nom. Tri–Aspen Constr. Co. v. Johnson,* 714 P.2d 484 (Colo. 1986); *Driscoll v. Columbia Realty–Wood-*

*land Park Co.,* 41 Colo.App. 453, 455, 590 P.2d 73, 74 (1978) (contractor liable to third parties for faulty plumbing installation).

¶ 50 After *Wright,* a division of this court again directly referred to the completed and accepted rule in *Lindauer,* 38 Colo.App. at 269, 555 P.2d at 199, describing it as "the policy that, after the owner accepts the work, it is the owner's and not the contractor's responsibility for maintaining and using the property in its defective condition." Here, the district court's reliance on *Lindauer* was misplaced, because the language it cited from *Lindauer* was dicta. The division in *Lindauer* merely described the completed and accepted rule; it did not adopt it as the law in Colorado, nor did it need to on the facts of that case.

¶ 51 Indeed, when faced with the opportunity to formally adopt the completed and accepted rule two years later, a division of this court expressly refused to do so. *See Driscoll,* 41 Colo.App. at 455, 590 P.2d at 74. The division in *Driscoll* stated:

> The rule that, absent privity, contractors and subcontractors are not liable in negligence for damage occurring after completion of the work and acceptance by the contractee, has been rejected by the bulk of jurisdictions which once adopted it. We are aware of no Colorado cases in which this 'accepted work doctrine' has been adopted, and we decline to adopt it now, as the doctrine creates illogical and unjust exceptions to general negligence principles.

*Id.* (citations omitted). *Driscoll* held that "[j]ust as lack of privity is no bar to a claim based on products liability, we hold it is no bar to a claim based on a subcontractor's allegedly negligent performance of a service contract." *Id.* (citation omitted). Thus, *Driscoll* aligned Colorado with the foreseeability rule regarding a contractor's performance on a construction contract.

¶ 52 In sum, based on our review of Colorado case law regarding the liability of construction contractors for injuries occurring after their work under a contract has been completed, we conclude that Colorado has rejected the completed and accepted rule

in the specific contexts of construction, repair, installation, and performance on a service contract. Instead, in these contexts, appellate court rulings in Colorado have consistently relied on the foreseeability rule. Colorado case law clearly establishes that contractors owe a duty of care to third parties who could foreseeably be injured by negligent construction, installation, repair, or performance on service contracts, even after the contractors' work has been completed and accepted by their employers. However, none of these established applications of the foreseeability rule directly addresses the situation presented here. Thus, we turn to an analysis and resolution of the contours and scope of the appropriate duty test to be applied in this case.

### 3. Articulation of the Appropriate Duty Rule

¶ 53 To be clear, Collard does not contend that Vista was negligent as to construction, installation, repair, or performance on its contract to build the medians. Rather, she contends on appeal that Vista had a duty to leave the work site in a safe condition for subsequent users, specifically by ensuring that the site had safety devices and signage to warn motorists of the medians, at least until the City installed its own safety devices and corrected the lane striping around the medians. As noted above, this contention is not directly addressed by existing precedent in Colorado.

¶ 54 In our effort to articulate a rule that applies to the facts at hand, we have considered the trend in Colorado law regarding contractor tort duties, as well as the majority of jurisdictions' reliance on the foreseeability rule. We also have considered whether other jurisdictions have addressed cases with similar facts.

¶ 55 In general, the law in the United States recognizes that "private contractors which perform road construction or repair work, have a common-law duty to warn motorists of the hazards created by construction or repair activities." Robert Michael Ey, *Causes of Action First Series* § 4 (1987); *see, e.g., Golden v. Madden Contracting Co.,* 469 So.2d 1039, 1043 (La.Ct.App.1985) (a con-

tractor's duty to warn motorists arises when its own work creates risks for the motoring public); *Cummins v. Rachner,* 257 N.W.2d 808, 809 (Minn.1977) (private road contractor possessed a mutual duty with the state to protect motorists from dangerous conditions in the construction zone through adequate warnings); *Swindell v. J.A. Tobin Constr. Co.,* 629 S.W.2d 536, 541 (Mo.Ct.App.1981) ("highway contractors have a continuing and nondelegable duty to exercise reasonable care for the safety of the public using the highway"); *Transcon Lines Corp. v. Cornell Constr. Co.,* 1975 OK 85, 539 P.2d 1372, 1375 ("[t]he liability of a highway contractor for injury to persons lawfully using the highway does not depend on contract, but arises out of a legal duty devolving upon him not to make the highway dangerous for ordinary use under the circumstances"); Ey, at § 6 ("Any duties created by contract generally will be in addition to, and not in lieu of, the contractor's common-law duty to warn.").

¶ 56 We have not found extensive law in other jurisdictions regarding a duty to warn once the contractor has completed its work and left the work site, as is the case with Vista. However, one commentator has summarized the case law as follows:

> [W]here a hazardous condition remains *after* the completion of a contractor's work on a road construction or repair project and adequate signs, signals, or devices are not provided to warn of the danger, the contractor may have to show that its failure to provide an adequate warning was in reasonable reliance on another contractor's assumption of the responsibility ..., or in other words, that it was not foreseeable that the hazardous condition would remain or that no warning would be provided.

Ey, at § 14 (emphasis added).

¶ 57 The closest case we have found to the situation before us is *Karrar v. Barry County Road Commission,* 127 Mich.App. 821, 339 N.W.2d 653 (1983). There, a road construction contractor was hired by the Michigan Department of State Highways to repave a road. *Id.* at 655. The project created a dangerous condition on the shoulders of the road. *Id.* The contract did not require the

contractor to grade the shoulders after completion of the project, which would have corrected the dangerous situation. *Id.* Rather, under the contract, a county road commission was obligated to eventually replace the shoulders and, in the meantime, warn motorists of the hazard. *Id.* After the contractor completed the paving project, and before the county commission had replaced the shoulders or installed safety signage, the plaintiff incurred injuries in a car accident as a result of the ungraded and unmarked road shoulders. *Id.*

¶ 58 On appeal from the trial court's order granting summary judgment for the contractor, the Michigan Court of Appeals ruled that (1) where a hazardous condition remains after the completion of a contractor's work on a road construction or repair project and (2) adequate signs, signals, or devices are not provided to warn of the danger, the contractor may be liable for injury to third parties *unless* it can show that it was not foreseeable that the hazardous condition would remain or that no safety warnings would be provided by the county. *Id.* at 657–58. The court held that the contractor had no duty to warn motorists of the hazardous situation it had created with its work specifically because it had reasonably relied on the contract with the county and could not have foreseen that the county would fail to perform. *Id.* In that regard, the court noted that the plaintiff had not "pointed to any undisputed facts suggesting that [the contractor] should have anticipated that the road commission would have failed to warn motorists of the drop-off and failed to correct the condition within the time period preceding the accident." *Id.* at 658.

¶ 59 *Karrar* is instructive, and we find its reasoning and analysis persuasive. Here, as in *Karrar*, the contractor had completed its contracted work. As in *Karrar*, Vista's contract with the City did not require Vista to provide for safety warnings or traffic control after the completion of its work. When Vista

left the work site, there were no safety devices in place, and the center line of the road led cars straight into the medians, thereby creating a foreseeably hazardous condition for motorists, as did the ungraded shoulders in *Karrar*. Vista relied on communications from the City that it was authorized (although not required) to remove its safety devices from the scene. Although the contractor in *Karrar* had the benefit of a written contract to delineate its post-performance duties and Vista had only verbal communications, we still find the facts of the cases sufficiently similar to rely on the Michigan court's reasoning in deciding whether Vista owed a common law duty to Collard here and, if so, what the scope of that duty should be.

¶ 60 Initially, we conclude that the duty issue here cannot be properly resolved by applying the completed and accepted rule as opposed to some form of the foreseeability rule, and, thus, further conclude that, to the extent the district court based its analysis on the completed and accepted rule, it erred.

¶ 61 Further, we conclude as a matter of first impression in Colorado, that because Vista's road construction work created a dangerous condition, it had a tort duty, for a reasonable period of time, either to eliminate the condition or to warn foreseeable users (such as Collard) of the road hazards that foreseeably could result in injuries, even if its work had been completed and accepted by the City; however, this duty will not be imposed if Vista had a reasonable good-faith belief that another authorized party (here, the City) would promptly take the necessary measures to eliminate the dangerous condition or provide adequate warnings to foreseeable users.[5]

¶ 62 The general scope and application of this rule is captured in Restatement (Second) of Torts § 384 cmt. e (1965):

> company in *Mora* "[did not] remove any warnings indicating the presence of a danger zone." *Id.* And the record in *Mora* showed that the contractor did not do anything to create the danger or risk; it merely resurfaced an existing road. *Id.*

---

5. Vista's reliance on *Mora v. State*, 68 Ill.2d 223, 12 Ill.Dec. 161, 369 N.E.2d 868 (1977), in support of a more limited duty rule is unpersuasive. First, *Mora* itself notes that the "uniform rule appears to be that a contractor has a duty to give warnings of dangers created by it." *Id.* at 871. Further, unlike our case, the contractor asphalt

[T]he work entrusted to the servant or contractor may be such that it necessarily creates a condition which is dangerous unless further steps are taken. In such a case the servant or contractor may be liable if he leaves the job in this dangerous condition, unless he has reason to expect that the necessary steps will be taken. The fact that his employer has retained charge of taking such steps or has entrusted them to another contractor is usually sufficient to warrant the ... contractor in assuming that they will be taken. On the other hand, the circumstances may be such as to lead him as a reasonable man to realize that this will not be done. In such a case the servant or contractor, after he realizes or should realize that such steps are not likely to be taken, is required to exercise reasonable care to take such steps as are then practicable to remove the danger created by his work.

*See also Keeton*, § 33, at 205 ("[I]t may be said that when the defendant is under a duty to act reasonably for the protection of the plaintiff, and may anticipate that a third person may fail to use proper care if the responsibility is transferred to him, and that serious harm will follow if he does not, it is not reasonable to place reliance upon the third person.").

■■■ ¶ 63 The duty we describe here is imposed upon the contractor as the creator of a dangerous condition, not as a possessor of the land. *See id.* at cmt. d. Accordingly, the contractor is potentially liable to both the possessor of the land and to third persons whom the contractor should reasonably expect to lawfully be upon the land in question. *Id.* at cmt. c.

■■■ ¶ 64 In our view, this rule is consistent with the overall trend of Colorado law, which holds that a contractor's duty to construct, install, repair, or perform with reasonable care persists after completion of the contract. With this rule, we simply extend existing precedent to include road construction contractors who create hazardous conditions and hold that they have a duty to protect motorists from those dangerous conditions that persist after the completion of their work. However, we limit the scope of the duty such that it does not arise if the contractor has a reasonable good-faith belief that another authorized entity will promptly eliminate the hazardous conditions or provide sufficient warnings of the danger.

¶ 65 Imposing such a duty on Vista here also comports with the policy considerations articulated by the supreme court in *Ryder* for determining the existence of a duty. *See Ryder*, 54 P.3d at 890; *see also Swieckowski*, 923 P.2d at 213.

- First, road construction often necessarily creates risk for motorists that persist after a contractor has completed its work;

- Second, while the foreseeability of injury from post-work conditions is often high, it is a necessary risk given the social utility of maintaining and repairing roads;

- Third, the burden on a contractor to guard against foreseeable injury after it leaves the work site is low, given that it can generally be easily addressed. Warning signage, diverting traffic, or specifically delegating the responsibility to an authorized entity such as the state or another contractor will eliminate the duty. Thus, the duty could be discharged by an express contractual undertaking by the owner of the property or the party in charge of the project to assume responsibility for safety warnings or other corrective measures promptly after the contractor has completed its work.

- Finally, the consequences of requiring the contractor to undertake such precautionary measures are both economically and practically minimal.

¶ 66 Because we conclude the district court applied the wrong legal standard for assessing whether Vista had a duty to Collard, we must reverse the summary judgment on Collard's common law negligence claim. Based on the correct duty rule, on remand, the district court may, in its discretion, allow the parties to conduct additional discovery on the duty issue, particularly as to whether Vista had a reasonable good-faith belief that the City would promptly take the necessary

measures to eliminate the alleged dangerous condition on the site or provide adequate safety warnings to third parties such as Collard. We express no opinion regarding whether the duty issue may be amenable to a subsequent summary judgment after a further record is developed under the applicable legal test.

### V. Award of Costs

¶ 67 Collard also appeals the district court's award of costs to Vista in the amount of $13,126.52 in expert witness fees. Because we have reversed the summary judgment on the common law negligence claim, the award of costs must be vacated, and the issue of costs should be reconsidered at the conclusion of proceedings in the district court.

¶ 68 The judgment is reversed as to the common law negligence claim and affirmed in all other respects; the order awarding costs is vacated; and the case is remanded for further proceedings.

Judge TAUBMAN and Judge WEBB concur.